473 S.E.2d 483

**In re: Tina Perry QUEEN, Executrix of the Estate of Jo Ann Perry.**

No. 23165.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1996.

Decided June 14, 1996.

**444**

David L. Grubb, Kelly & Grubb, Charleston, for Tina Perry Queen.

Charles W. Peoples, Jr., Huntington, for Wayne County Sheriff.

CLECKLEY, Justice.

Tina Perry Queen, as executrix of the estate of Jo Ann Perry, the respondent below, appeals a judgment of the Circuit Court of Wayne County reversing a decision of the Wayne County Correctional Officers' Civil Service Commission reinstating Jo Ann Perry to her position as a correctional officer. The circuit court found the Commission's determination was not supported by substantial evidence. For the reasons set forth below, we reverse the judgment of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The respondent below, Jo Ann Perry,[1] was employed as a correctional officer for the Wayne County Sheriff's Office from October, 1991, to September, 1994, when she was discharged. Prior to her discharge, the respondent's brief indicates she had "never been warned, reprimanded, suspended, demoted or terminated in her nearly three years of employment with the Sheriff of Wayne County." According to the respondent, on September 11, 1994, she reported to work at 8:00 a.m., and, over the course of the next several hours, she was the subject of sexual advances or an assault by an inmate, was engaged in a dispute over her assignment to a "constant watch" of the prisoner who made the sexual advances, and began her menstrual cycle but was unable to shower or change because of a lack of facilities for female correctional officers.

Because of these events, the respondent repeatedly requested that her superiors provide a relief officer to finish her shift. The respondent then explained the events of the evening to James Jacques, another correctional officer, and again requested that he provide a relief officer or she would be forced to "walk out." The position of the Wayne County Sheriff's Department, the petitioner below, is that the respondent actually stated that she was going to quit. The respondent then claims she was told by Chief Correctional Officer Greg Potter to think the matter over but, if she wanted to quit, to leave her resignation on his desk. The respondent states she had no desire to quit, so she did not leave anything in writing on her supervisor's desk. However, she called to see if a

---

1. Upon the respondent's death, her daughter, Tina Perry Queen, who was also the executrix of the estate of Jo Ann Perry, filed to be substituted as the appellant.

relief officer had been called. Upon learning that a relief officer had arrived, the respondent states she spoke to the relief officer, Frank Pelfrey, "to verify his presence and then went home for the day." The petitioner claims the record reflects that the respondent "intended to quit on September 11, 1994, in fact did so, and that her actions subsequent thereto supported the Sheriff's belief she had quit her position[.]" Moreover, the petition asserts that the respondent did not inform the sheriff until three to four weeks later about her reasons for leaving the jail on September 11, 1994.

The next day when she arrived at work, the respondent indicated that she spoke to the relief officer from the previous day who questioned why she was at work, considering she had been suspended. The Sheriff's Department contends there is no evidence in the transcript that the relief correctional officer made such a statement and there was also no evidence that the Sheriff's Department ever suspended the respondent. The respondent claims she then spoke to the Sheriff who told her if she wanted her job back, she would have to go through the Civil Service Commission. On October 17, 1994, the respondent requested a hearing before the Wayne County Civil Service Commission.

During the intervening time period, the respondent claims that her public employee's insurance coverage was canceled, effective September 11, 1994. After the hearing was conducted, the Commission, on January 11, 1995,[2] entered a final order signifying that the respondent was improperly terminated. The order indicated the respondent was to be

reinstated immediately with full pay. The Sheriff apparently disobeyed the order because the respondent was neither reinstated nor did she receive any back pay. The Sheriff petitioned the circuit court for an appeal of the final order, but did not request a stay of the aforementioned order. The circuit court held a hearing on July 27, 1995, in which it reversed the decision of the Commission. The respondent appeals from this order.

## II.

### DISCUSSION

This is one of those employment disputes in which neither of the parties acquitted themselves with pure grace. Working through the detailed record of such a case causes one to understand better the ancient curse of a plague o' both their houses. *See* William Shakespeare, *Romeo and Juliet,* act 3, sc. 1.[3] Nevertheless, since the parties could not resolve their dispute, the Wayne County Correctional Officers' Civil Service Commission did. It is from its decision that this appeal emanates. The sole issue before this Court is whether the circuit court erred in substituting its judgment for that of the Civil Service Commission.[4] The respondent contends it is only appropriate to reverse the Civil Service Commission if the Commission's decision was clearly wrong or based upon a mistake of fact, which the respondent claims was not present in this case. Specifically, the respondent cites Syllabus Point 1 of *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971), where we held: "A final order of a police civil service commission based upon

---

2. Apparently, in violation of a statute requiring that hearings be conducted within ten days of a request, the respondent was not notified that a hearing would be held until a procedural order dated December 22, 1994, was issued by the Commission three months after her request.

3. The Complete Works of William Shakespeare 1027 (Avenel Books ed. Crown Publishers 1975).

4. We need not discuss the respondent's second assignment of error in which she argues that the circuit court erred in concluding that, if the respondent did quit her job, the Civil Service Commission lacked authority to reinstate her. W. Va.Code, 7–14B–17(a) (1983), reads, in part:

"[N]o correctional officer of any county shall be removed, discharged, suspended or reduced in rank or pay except for just cause ...; and no such correctional officer shall on and after the effective date of this article, be removed, discharged, suspended or reduced except as provided in this article and in no event until he [or she] shall have been furnished with a written statement of the reasons for such action." Because we find the Civil Service Commission's finding that the respondent was fired is supported by substantial evidence, there is no occasion for us to discuss the powers of the Commission to consider cases arising from voluntary terminations.

a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law."

The respondent further argues that the Civil Service Commission's key finding was that she was improperly terminated. The circuit court reversed on the basis that there was no reasonable basis in evidence to support this finding. The respondent points to the record which she asserts indicates that, although she threatened to quit, she did not actually do so. Moreover, she claims she only threatened to quit if no relief officer was provided and, because one was provided and she knew one had been called in, she had no reason to quit.

■ Our review of the circuit court's decision made in view of the Commission's action is generally *de novo.* Thus, we review the Commission's adjudicative decision from the same position as the circuit court. The Commission's adjudicative decision should not be overturned by either court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 292, 387 S.E.2d 524, 527 (1989). Review under this standard is narrow and the reviewing court looks to the Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376–77, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377, 394 (1989). We may reverse the Commission's decision as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of Commission expertise. *See generally Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

■ Whether the respondent quit or was fired is a question of fact committed to the discretion of the Civil Service Commission. The Commission found that she was fired. In this regard, we must first determine whether the Civil Service Commission's decision was based upon "substantial evidence" and, secondly, whether its findings and conclusions were adequately explained. If they were, the circuit court's order reversing the Commission must be set aside as a matter of law. In assessing whether the Civil Service Commission's decision was based upon substantial evidence, we are obliged to give reasonable deference to its factual findings. *See Board of Educ. of County of Mercer v. Wirt,* 192 W.Va. 568, 579, 453 S.E.2d 402, 413 (1994). "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume the agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." *Frymier–Halloran v. Paige,* 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995).

■ "Substantial evidence" requires more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If the Commission's factual finding is supported by substantial evidence, it is conclusive. Neither this Court nor the circuit court may supplant a factual finding of the Commission merely by identifying an alternative conclusion that could be supported by substantial evidence. *Arkansas v. Oklahoma,* 503 U.S. 91, 113, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239, 259 (1992); *Board of Educ. of County of Mercer v. Wirt,* 192 W.Va. at 579, 453 S.E.2d at 413. Also, this Court may not "displace the ... [Commission's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before ... [us] *de novo.*" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456, 467–68 (1951); *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. at 304, 465 S.E.2d at 406. Civil Service Commission members, like juries, are usually representatives of the community-at-large; in addition, given that they draw on a fund of knowledge and expertise all their own, we must also give great deference to the Commission's selection of remedy.

Nonetheless, a reviewing court serves as more than a rubber stamp for Commission determinations, even when credibility assessments are at issue. Where, as here, witnesses' versions of events are at odds, we must examine credibility determinations with care. This is particularly necessary where, as here, the factfinder has not provided a reason for a credibility assessment and the record viewed as a whole could support an alternative conclusion.[5] Our view of the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.*, 340 U.S. at 488, 71 S.Ct. at 464, 95 L.Ed. at 467–68. As we suggested above, the fact that two inconsistent conclusions may be drawn does not prevent an administrative agency's findings from being supported by substantial evidence. Indeed, if the Commission's findings are based on its assessment of the credibility of witnesses and if adequately explained and supported by the record, the findings will not be overturned unless they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary evidence.

If the Commission believed the respondent's testimony that suggested she did not, in fact, quit and disbelieved the sheriff's testimony and evidence to the contrary, this would be sufficient to require the sustaining of the Commission's findings in this case. We cannot say that this combination of belief and disbelief would be unreasonable, but we cannot uphold a decision by an administrative agency any more than we can uphold a decision by a circuit court if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result. *See Brown v. Gobble*, 196 W.Va. 559, 474 S.E.2d 489 (1996).

Our review of the record indicates that the evidence was sufficient to support the findings of the Civil Service Commission. The transcript of the hearing before the Commission contains a substantial number of facts and statements that bear materially on the Commission's conclusion that the respondent did not quit. In fact, Chief Correctional Officer Greg Potter, who was one of the persons the respondent called on the night in question, testified the respondent called him and told him she was going to quit if she did not get a relief officer. He further testified that he asked her to reconsider but told her if she still wanted to quit then to leave her resignation on his desk. Finding no resignation the next morning, Chief Potter stated he "took it for granted that she [the respondent] never quit." In fact, Chief Potter specifically indicated he never had an understanding that the respondent quit her job and he thought the sheriff, "Mr. Shy[,] stated to me that he was going to suspend her for awhile." However, no specific period was stated for the suspension and the witness asserted the sheriff eventually told him the respondent would not be returning to work.

Testimony of another witness, Officer Wayne Adkins, also confirmed part of the respondent's statement of the events. Officer Adkins testified that he spoke with the inmate the respondent claimed made sexual advances towards her. Officer Adkins stated the inmate indicated he was brought out into the general population with the other prisoners, as the respondent claimed, and the inmate admitted that not only was he intoxicated as claimed but that, although the inmate could not remember his actions specifically, he might have made sexual advances towards the respondent. Moreover, Officer Adkins agreed with the respondent's conclusion that it was a poor decision to bring out into the general prison population this inmate who was supposedly under a suicide watch and put him back on trusty status because to do so would give him access to various dangerous items. Specifically, Officer Adkins as-

5. The record must demonstrate that the Commission considered all the evidence, but a Commission is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting its decision, the Commission, as the factfinder, also must discuss the uncontroverted evidence it chooses not to rely upon, as well as significantly probative evidence it rejects. Thus, a minimal level of articulation of the Commission's assessment of the evidence is required in cases in which considerable evidence is presented to counter the Commission's position.

serted it was inappropriate for the respondent to be forced to watch not only the female prisoner trusties in the kitchen but also to watch a supposedly intoxicated and suicidal male inmate in the same environment around dangerous kitchen implements. Officer Adkins also testified the sheriff had made comments two to three months prior to the plaintiff's disputed termination to the effect that women should not work at the jail. Officer Adkins stated: "In my own heart, if it had been a male officer that had done the very same thing, this would not—we would not be having this meeting[,]" the sheriff would have acted differently had it been a male officer involved in a similar situation.

The relief officer that came to the jail on the night in question, Officer Pelfry also bolstered the respondent's case by affirming that the respondent did not wantonly leave her post and, in fact, waited until she checked on his arrival before she left work. The respondent herself then testified that she called Correctional Officer Jacques four times for relief help. However, she felt she never had the opportunity at the time to explain to Officer Jacques all the problems she had that day. She then called other people to try to remedy the situation after Officer Jacques' inaction. The respondent claims that those she called included the sheriff, whose wife informed the respondent that the sheriff was on the farm and could not be reached by phone; the day-shift commander; and Chief Potter. She asserted that had a relief officer been called when she originally requested one, she could have gone home to take a shower and returned to work within an hour. Noting that she was the last woman working at the jail, the respondent also concurred she was treated differently because she was a woman.

She further stated the Sheriff told her on the following Monday she was suspended, and she did not in fact find out there were any problems until Monday morning when she called the office to see if she should bring any coffee filters into work. Moreover, the respondent contended no meeting was ever called concerning the events of that night, and she specifically denied the Sheriff's testimony to the effect that she told Officer Jacques she was quitting.

Not all the witnesses, however, testified on the respondent's behalf. Besides himself, the petitioner only put on one witness to support his argument. That witness was Officer Jacques who testified he saw the respondent sitting at Chief Potter's desk writing out something that was supposedly her resignation. However, Officer Jacques admitted he never read what she wrote and he never saw this document again. Officer Jacques, however, asserted that the respondent resigned as a result of her disagreement over bringing the inmate who harassed her back out into the general population. Although he himself admitted that while it was normal to have officers do two tasks at one time, it was not normal to put a supposedly suicidal person back out into the general population as a trusty, as purportedly happened in this case. He also testified that he asked the petitioner if he wanted to talk to the respondent who he claims was upset and had quit by the time he called the petitioner, and the petitioner replied: " '[T]here's really no sense in talking to her.' " The petitioner only testified that he understood because of Officer Jacques' report the respondent quit her job over his decision to put the prisoner out into the general prison population. However, even the petitioner had to admit that all his actions concerning the respondent were based on Officer Jacques' letter and that the respondent never personally told him that she quit her job. With the exception of maintaining that the respondent quit and was not fired, the petitioner never specifically attempted to dispute any of the witnesses' understanding of the events surrounding the respondent's eventual termination.

In reversing the circuit court and reinstating the decision of the Commission, we are mindful that the system of judicial review reposes substantial discretion in the first-line tribunal with regard to issues of fact and the application of law to the facts. It is only when the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions may the reviewing court reverse. While this case easily could have gone the other way, the Commission chose to

credit the testimony of the respondent and we are told of no rational way that a reviewing court can disagree.[6]

## III.

### CONCLUSION

We conclude that the findings of the Correctional Officers' Civil Service Commission that the respondent was fired are supported by substantial evidence on the record and are consistent with established law. Therefore, the judgment of the Circuit Court of Wayne County is reversed, and the case is remanded to the Circuit Court to enter judgment consistent with this opinion.

Reversed and remanded.

---

**6.** The final order of the Commission was inadequate in that it did not make specific findings of fact relied upon to support its ultimate conclusion. Ordinarily, we would remand for more detailed findings. In *Brown v. Gobble*, 196 W.Va. 559, 569, 474 S.E.2d 489, 499 (1996), we suggested that when the factfinder "decides against the greater amount of the evidence, the ... [Commission] is obligated to give a fuller explanation for ... [its] ruling. Under these circumstances, the findings ... must be sufficiently detailed, reasoned, and logical to enable the reviewing court to trace a persuasive path between the evidence and the judgment." (196 W.Va. at 569, 474 S.E.2d at 499). Here, we find that the Commission's decision is supported by the greater amount of evidence, and we find no necessity to remand for further factfinding. In future cases, however, administrative agencies should make specific and separate findings of fact, opinions, and conclusions of law that will address all material aspects of the case, including credibility issues. Important liberty and property interests, not to mention significant public interests, are at stake in these proceedings and it is the obligation of administrative agencies to give the parties the full benefit of their reasoning by setting forth their findings in suitable detail in their final orders.