# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**QUINN TRANSPORTATION, LLC,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-186**        (JCN: 2021021272)

**DANIEL T. PARK,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Quinn Transportation, LLC, ("Quinn") appeals the April 10, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Daniel T. Park filed a timely response. [1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and authorizing a left shoulder reverse arthroplasty procedure.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Park completed an Employees' and Physicians' Report of Occupational Injury on April 14, 2020, indicating that he injured his left shoulder at work. According to the physicians' section, Mr. Park was diagnosed with a left arm strain which was attributed to an occupational injury. Subsequently, Mr. Park underwent an MRI of his left shoulder, which revealed a rotator cuff tear. On March 5, 2021, Mr. Park underwent surgery to correct the rotator cuff tear.

Following the surgery, Mr. Park participated in physical therapy but continued to suffer symptoms of left shoulder muscle fatigue with an inability to lift weight. Clinical notes from his physical therapist indicate that on June 11, 2021, Mr. Park reported that he had used his left arm to reach for the turn signal in his vehicle when he felt a sharp pain in the back of his shoulder. At an appointment on June 16, 2021, Mr. Park indicated that his shoulder was "still hurting," and the physical therapist noted that progress with strength was slow. Notes from a June 21, 2021, appointment indicate that Mr. Park was performing like someone would six weeks post-surgery, though he was much farther out from his

---

[1] Quinn is represented by Jeffrey B. Brannon, Esq. Mr. Park is self-represented.

1

surgery than six weeks, and the physical therapist implied that the reason for his slow progress may be because his rotator cuff tear had been "massive." On June 28, 2021, Mr. Park reported to his physical therapist that he felt a "pop" in his shoulder when he reached to open a door and that it was sore afterward.

On July 15, 2021, Mr. Park underwent an MRI arthrogram of the left shoulder, which revealed a recurrent massive rotator cuff tear. Though not clear from the record, it appears as though Mr. Park's treating physician/surgeon, George K. Bal, M.D., requested authorization for a left shoulder reverse arthroplasty to correct the recurrent tear. At Quinn's request, Randall K. Schaefer, M.D., performed a claim evaluation dated September 10, 2021, wherein he addressed the issue of whether the left shoulder reverse arthroplasty requested by Dr. Bal should be authorized. Citing to the Official Disability Guidelines ("ODG") by MCG Health, Dr. Schaefer opined that "the medical necessity of this request is not established." According to Dr. Schaefer, the ODG provides "indications" for a reverse shoulder arthroplasty and that, upon review of the medical evidence submitted to him, it was unclear whether Mr. Park met the indications. For example, Dr. Schaefer noted that he had no documentation of Mr. Park's BMI, psychological state, deltoid function and passive range of motion, and indications of failure in postoperative care. As such, Dr. Schaefer recommended against authorizing the procedure.

By order dated September 17, 2021, the claim administrator denied Dr. Bal's request for authorization of a left shoulder reverse arthroplasty based on Dr. Schaefer's report. Mr. Park protested this order to the Board. On October 13, 2021, Dr. Bal authored correspondence wherein he indicated that Mr. Park had suffered a recurrent massive rotator cuff tear and was in need of a reverse arthroplasty. Dr. Bal addressed the issues raised by Dr. Schaefer, explaining that Mr. Park had demonstrated limited functional demands that plateaued with physical therapy, had a BMI less than 40, and was psychologically stable. Dr. Bal opined that the procedure was a reasonable option to help improve Mr. Park's pain and function.

Mr. Park underwent an independent medical evaluation performed by Chuan Fang Jin, M.D., in February of 2022. Dr. Jin examined Mr. Park and reviewed several records, including emergency room records from the date of Mr. Park's injury, clinical notes from Mr. Park's physical therapy sessions, clinical notes from appointments with Dr. Bal in January of 2021 and January 2022, a report from Mr. Park's March 2021 rotator cuff repair, and both MRI reports. Dr. Jin did not specifically mention Dr. Bal's October 13, 2021, correspondence. Dr. Jin recommended against authorizing the left shoulder reverse arthroplasty. According to Dr. Jin, the medical evidence showed that Mr. Park suffered a rotator cuff tear superimposed on preexisting degenerative changes/arthrosis of the left shoulder, which was surgically repaired. Dr. Jin agreed that a reverse arthroplasty was an appropriate treatment option for Mr. Park's condition, but opined that the recurrent tear was not related to the compensable injury because the initial rotator cuff tear had been surgically corrected. Dr. Jin noted that nontraumatic rotator cuff tears commonly occur in

2

shoulders with degenerative conditions and that a rotator cuff will typically not have a recurrent tear without new trauma. Dr. Jin opined that, logically, the recurrent tear was a direct result of underlying degenerative issues and not the compensable injury.

By order entered on April 10, 2023, the Board reversed the claim administrator's order and authorized the left shoulder reverse arthroplasty procedure. The Board found that Dr. Schaefer acknowledged that a reverse arthroplasty would be an appropriate treatment for Mr. Park's recurrent rotator cuff tear if he met certain criteria and that Dr. Bal's October 13, 2021, correspondence demonstrated that Mr. Park did, in fact, meet the criteria set forth in Dr. Schaefer's report. While Dr. Jin recommended against authorizing the procedure, the Board found that she did not appear to be aware of Dr. Bal's assessment of "status post rotator cuff repair and biceps tenodesis with subsequent failure of the construct" and, therefore, found her report was not persuasive.

The Board acknowledged Quinn's arguments that Mr. Park sustained intervening incidents that could have caused the recurrent tear, including his reaching for his turn signal and opening a door as noted in his physical therapy records. However, the Board found that there was no medical opinion regarding the significance of these incidents. The Board concluded that Dr. Bal performed Mr. Park's initial rotator cuff repair surgery and continued to treat him thereafter and, as such, was in the best position to determine the necessary treatment. According to the Board, the medical evidence demonstrated that Mr. Park continued to have symptoms following his rotator cuff repair and that a subsequent MRI revealed a recurrent rotator cuff tear. The Board concluded that this evidence established that the left shoulder reverse arthroplasty was medically necessary for and reasonably related to the compensable injury. Quinn now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

3

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Quinn argues that the Board was clearly wrong in reversing the claim administrator's order and authorizing the left shoulder reverse arthroplasty. According to Quinn, the medical evidence establishes that Mr. Park's rotator cuff tear was surgically repaired in March of 2021, and Mr. Park failed to establish that his recurrent rotator cuff tear was causally related to the compensable injury. Quinn argues that the Board erred in disregarding the report of Dr. Jin, who was the only physician who specifically addressed the causal relationship between the recurrent tear and the compensable injury, and the report of Dr. Schaefer, who demonstrated that the medical necessity of the procedure had not been established. Moreover, Quinn argues, the Board ignored the fact that several intervening events occurred, as noted in the physical therapy clinical notes, that could have caused the recurrent tear. Given these alleged failures by the Board, Quinn concludes that this Court must reverse the April 10, 2023, order authorizing the reverse arthroplasty procedure.

Upon our review, we find that Quinn failed to demonstrate that the Board's findings and conclusions were clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this high standard of review in mind, we are unable to conclude that the Board erred authorizing the request for a left shoulder reverse arthroplasty.

West Virginia Code § 23-4-3(a)(1) (2005) provides that the claim administrator must provide medically related and reasonably required "[s]ums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies." Here, the Board found that Dr. Bal performed Mr. Park's rotator cuff repair and continued to treat him thereafter and, as such, was in the best position to determine the necessary treatment for Mr. Park's condition. The medical evidence demonstrated that, following Mr. Park's second MRI, Dr. Bal assessed him as status post rotator cuff repair and biceps tenodesis with subsequent failure of the construct, and that Dr. Bal opined that the requested left shoulder reverse arthroscopy was a reasonable treatment option for Mr. Park.

While Quinn argues that the reports of Drs. Jin and Schaefer were more persuasive, we find no error in the Board's findings in that regard. Specifically, the Board found that Dr. Jin's report was not persuasive because she was not aware of Dr. Bal's assessment. Though Quinn cites to portions of Dr. Jin's report indicating that she considered some reports from Dr. Bal, she did not mention his opinion that the construct had failed following Mr. Park's initial rotator cuff repair. Further, though Quinn points out that Dr. Schaefer found that the medical necessity of the procedure had not been established, the Board found

4

that Dr. Schaefer agreed that the reverse arthroplasty was reasonable if Mr. Park met certain criteria and that Dr. Bal demonstrated that Mr. Park did, in fact, meet those criteria.

Moreover, while Quinn claims that there were intervening events, such as Mr. Park reaching for his turn signal and opening a door, that caused the recurrent tear, it cites to no medical evidence attributing the recurrent tear to these so-called intervening incidents. Accordingly, based on this evidence, we cannot find that the Board was clearly wrong in concluding that the request for the left shoulder reverse arthroplasty was medically necessary for and reasonably related to the compensable injury based on Dr. Bal's assessment of status post rotator cuff repair and biceps tenodesis with subsequent failure of the construct. Therefore, we affirm the Board's April 10, 2023, order authorizing the left shoulder reverse arthroplasty.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5