# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RENEE WHEELER,**
**Claimant Below, Petitioner**

**FILED**
**February 8, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-417**          (JCN: 2020011957)

**CARDINAL HEALTH 110, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Renee Wheeler appeals the August 23, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Cardinal Health 110, LLC ("Cardinal Health") timely filed a response. [1] Ms. Wheeler filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Ms. Wheeler a 1% permanent partial disability ("PPD") award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 23, 2019, Ms. Wheeler was lifting a box over her head when she experienced pain behind her left shoulder blade. Ms. Wheeler continued to work and two days later, on October 25, 2019, she experienced similar symptoms while lifting a box from the floor. Ms. Wheeler sought treatment at MedExpress on October 30, 2019, and a physical examination revealed that her range of motion in her upper back was normal, there was no midline tenderness in the upper back, and she had full strength against resistance in her upper back. Ms. Wheeler was diagnosed with a thoracic sprain and, with the assistance of MedExpress staff, completed an application for workers' compensation benefits.

Ms. Wheeler returned to MedExpress on November 4, 2019, with continued complaints of pain. Clinical notes indicate that her range of motion was limited due to pain and paraspinal tenderness and muscle spasms were noted in the upper back. By order dated November 7, 2019, the claim administrator held the claim compensable for a thoracic

---

[1] Ms. Wheeler is represented by Sandra K. Law, Esq. Cardinal Health is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq.

1

sprain. On November 11, 2019, Ms. Wheeler returned to MedExpress, and her strength and range of motion appeared normal during the physical exam. She was also noted to have full strength and range of motion in her upper back during examination on November 18, 2019, and December 9, 2019, although pain continued to be noted in strength testing. Medication and physical therapy were prescribed.

On November 25, 2019, Ms. Wheeler was treated by Charla Anderson, M.D. Ms. Wheeler reported pain behind her left shoulder blade, and Dr. Anderson noted upper back mobility deficits. Ms. Wheeler continued with physical therapy through December of 2019. On February 6, 2020, Ms. Wheeler was seen by Ian Saxer, PA, who was supervised by Edward Prostko, M.D. Ms. Wheeler reported pain in the left periscapular region that began after feeling a pop in the area when lifting a box over her head. Mr. Saxer assessed musculoskeletal back pain and recommended an MRI to rule out a structural lesion.

Ms. Wheeler underwent an MRI of her thoracic spine on February 21, 2020, which revealed spondylosis and disc disease with bulging from T5-T10 and a disc herniation at T10-T11. Ms. Wheeler returned to Dr. Prostko on March 6, 2020, and he noted that physical examination revealed no focal sensory deficits and that her muscle stretch reflexes were active symmetrically with no pathological reflexes. Dr. Prostko did not observe any clear mechanical problems that could explain Ms. Wheeler's ongoing symptoms and, as such, recommended an MRI of her cervical spine and a CT SPECT bone scan. A physician assistant in Dr. Prostko's office, Nicole Kovach, also examined Ms. Wheeler and noted that although the thoracic MRI showed mild disc bulging, there was nothing at a level that would explain Ms. Wheeler's symptoms.

Ms. Wheeler underwent an MRI of her cervical spine and a CT SPECT bone scan on May 4, 2020. The MRI revealed diffuse disc bulging at C3-C6, and the impression was various degrees of spinal canal and foraminal stenosis from C3-C6, mild desiccation of the C3-C6 discs with mild loss of disc height at C4-C5 and a focal posterior annular fiber rupture involving C4-C5 and C5-C6, reversal of the normal cervical curvature centered at C4, and small anterior osteophytes from C4-C6.[2] The bone scan was negative. Ms. Wheeler returned to see Dr. Prostko on May 21, 2020. Dr. Prostko reviewed the imaging studies and noted that Ms. Wheeler did have a moderate disc osteophyte complex on the right at C4-C5, but nothing on the left side that would indicate operative intervention. Dr. Prostko further noted that there was no evidence of an active facet arthropathy.

---

[2] Of note, in March of 2017, Ms. Wheeler sought treatment for complaints of pain in her neck and bilateral upper extremities. Ms. Wheeler underwent an MRI of her cervical spine, which revealed a disc herniation on the left at C5-C6, and an EMG, which was positive for C6 radiculopathy. The record appears to indicate that Ms. Wheeler's symptoms in her neck and left upper extremity had resolved by April of 2017.

On June 2, 2020, Ms. Wheeler was seen by Todd Franco, D.O., an orthopedist. Dr. Franco noted no pain with range of motion in either shoulder. Dr. Franco suspected a muscle tear and recommended an MRI of the left scapula, which was performed on July 7, 2020. The impression was "unremarkable exam without any finding to explain the patient's symptoms." Ms. Wheeler returned to Dr. Franco and his associate, Timothy Lipp, D.O., on July 9, 2020, and July 20, 2020. Tenderness to palpation at the inferior border of the scapula was noted, but overall, the left shoulder exam was normal. Drs. Franco and Lipp diagnosed periscapular pain and referred Ms. Wheeler to orthopedist Peter Tang, M.D.

Ms. Wheeler was seen by Dr. Tang and his colleague Victor Greco, M.D., on July 22, 2020. Ms. Wheeler had full active and passive range of motion in her left shoulder, but some asymmetry of the scapula with left lateral scapular winging was noted. A recent MRI of the left scapula revealed some abnormalities about the insertion of the serratus anterior insertion site, so Drs. Tang and Greco recommended an MRI of Ms. Wheeler's chest. The MRI of Ms. Wheeler's chest, performed on August 18, 2020, was negative for any tears.

Ms. Wheeler again treated with Dr. Franco on September 29, 2020, and continued to complain of pain behind her shoulder blade. Dr. Franco noted tenderness over the medial scapular border and pain with serratus anterior activation during physical examination. Dr. Franco assessed periscapular pain and serratus anterior muscle pain and recommended additional physical therapy.

On November 10, 2020, Ms. Wheeler underwent an independent medical evaluation ("IME") performed by Thomas D. Kramer, M.D. Upon physical examination, Dr. Kramer noted that there was no palpable or visible spasm or swelling, no evidence of tenderness over the cervical or thoracic region, no evidence of scapular winging or dyskinesis, and no asymmetry of the trapezius muscles. Dr. Kramer did note tenderness over the lower scapular region. Ms. Wheeler's neurologic examination was objectively normal. Dr. Kramer opined that Ms. Wheeler had sustained a thoracic and left scapular strain as a result of her work-related injury but noted that there was nothing to explain her ongoing complaints of pain. According to Dr. Kramer, Ms. Wheeler had fully recovered from her strains and that "[t]here are absolutely no objective findings on her physical examination to substantiate an ongoing scapular and thoracic strain." In fact, the only abnormality, Dr. Kramer stated, was subjective tenderness. Dr. Kramer indicated that Ms. Wheeler was fully recovered and needed no further medical treatment. He did not provide an impairment rating.

On January 6, 2021, Ms. Wheeler returned to see Dr. Franco. Ms. Wheeler reported new symptoms, including numbness in her arms and legs, which Dr. Franco did not attribute to the instant work-related injury. During the physical examination, Dr. Franco noted Ms. Wheeler's range of motion to be unrestricted in all planes.

3

Ms. Wheeler underwent a second IME, which was performed by Bruce Guberman, M.D., on February 25, 2022. Dr. Guberman diagnosed chronic musculoligamentous strain at the thoracic spine and chronic posttraumatic strain of the left shoulder, and noted that Ms. Wheeler had tenderness and range of motion abnormalities in the thoracic spine and left shoulder. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Guberman assessed 4% whole person impairment ("WPI") for range of motion abnormalities in the thoracic spine and 2% WPI based on Table 75 of the *Guides*, which combined to 6% WPI. This 6% WPI fell within the permissible range for Thoracic Spine Category II of West Virginia Code of State Rules § 85-20 table D (Jan. 20, 2006), and required no further adjustment. Dr. Guberman also assessed 1% WPI for range of motion abnormalities in the left shoulder. In sum, Dr. Guberman assessed 7% WPI related to Ms. Wheeler's work-related injury.

Ms. Wheeler underwent a final IME, performed by Victoria M. Langa, M.D., on April 27, 2022. Dr. Langa opined that the compensable injury had been mischaracterized as a thoracic strain when Ms. Wheeler's complaints had always been localized to the left scapula rather than the thoracic midline. Dr. Langa stated that the injury would be best characterized as a left periscapular sprain/strain. Using the *Guides*, Dr. Langa assessed 0.5% impairment for range of motion abnormalities and assigned no impairment based on Table 75. Dr. Langa placed Ms. Wheeler in Thoracic Spine Category I of the West Virginia Code of State Rules § 85-20 table D, for a final recommendation of 0% WPI pertaining to the thoracic spine. Regarding the left shoulder, Dr. Langa assessed 1% WPI for range of motion abnormalities, which was her final recommendation. By order dated June 7, 2022, the claim administrator granted Ms. Wheeler a 1% PPD award in accordance with Dr. Langa's report. Ms. Wheeler protested and later testified via deposition regarding her injury and ongoing symptoms.

By order dated August 23, 2023, the Board affirmed the claim administrator's order granting Ms. Wheeler a 1% PPD award. The Board discussed the reports of Drs. Guberman and Langa, noting that the main difference between their opinions was impairment related to the thoracic spine. Although Dr. Guberman found Ms. Wheeler to have range of motion abnormalities in the thoracic spine, the Board concluded that Dr. Langa's finding that Ms. Wheeler had no ratable impairment for the thoracic spine to be more persuasive. Specifically, the Board noted that the initial medical records from MedExpress showed that Ms. Wheeler had normal range of motion in her upper back, and that neither Drs. Prostko, Franco, Greco, nor Tang indicated any range of motion abnormalities in their various examinations that were performed in March, June, and July of 2020, respectively. More recently, the Board noted, Dr. Kramer examined Ms. Wheeler and found no range of motion abnormalities in the spine. Given this evidence, the Board concluded that Dr. Langa's finding of no ratable impairment in the thoracic spine was most consistent with the weight of the medical evidence and, as such, affirmed the PPD award based on Dr. Langa's report. Ms. Wheeler now appeals.

4

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Ms. Wheeler argues that the Board erred in not awarding her a PPD award consistent with Dr. Guberman's report when there was clear evidence of herniated and bulging discs in her thoracic spine following her work injury. According to Ms. Wheeler, the Board incorrectly relied on Dr. Langa's report, which was not performed in accordance with the *Guides*. Ms. Wheeler contends that Dr. Langa wrongly found no impairment based on Table 75 of the *Guides* when she clearly met the requirements for a 2% impairment rating based on Subheading B of Table 75. Ms. Wheeler further argues that when applying Rule 20, Dr. Langa incorrectly placed Ms. Wheeler in Category I, which requires "no significant clinical findings, no observed muscle guarding, no documentable neurologic impairment, no changes in structural integrity and no other indication of impairment related to injury or illness; no fractures." Ms. Wheeler contends that it was unreasonable for Dr. Langa to place her in Category I when the MRI showed herniated and bulging thoracic discs. In contrast, Ms. Wheeler argues, Dr. Guberman correctly assigned her impairment from Table 75 of the *Guides* and correctly placed her in Category II when applying Rule 20.

Ms. Wheeler further argues that the Board erred in selectively choosing medical records that supposedly indicated a normal thoracic range of motion to support its conclusion. Ms. Wheeler argues that the MedExpress records were observational and did not measure range of motion with an inclinometer. Moreover, reports from physical therapy indicated 50% loss of extension in the thoracic spine during range of motion testing. Although Drs. Prostko, Franco, and Greco did not comment on Ms. Wheeler's

5

thoracic range of motion, she claims they were focused on her shoulder complaints rather than her thoracic spine. Ms. Wheeler also notes that Dr. Kramer never specifically commented on her thoracic range of motion and, importantly, did not perform an examination in accordance with the *Guides* or provide an impairment rating.

Lastly, Ms. Wheeler argues that her herniated thoracic discs should have been presumed to have occurred from the compensable injury per *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), and as such, should have warranted a higher impairment rating. At the very least, she claims, the Board should have resolved the claim in her favor pursuant to West Virginia Code § 23-4-1g (2003).[3]

Upon review, we find that Ms. Wheeler failed to demonstrate that the Board's findings and conclusions were clearly wrong. The Supreme Court of Appeals of West Virginia has held that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard in mind, we are unable to conclude that the Board erred in awarding Ms. Wheeler a 1% PPD award in accordance with Dr. Langa's recommendation.

At the outset, we dispense with Ms. Wheeler's argument that her herniated or bulging thoracic discs are attributable to the compensable injury and should be included in consideration of an impairment rating. These herniated/bulging discs were never held compensable, and the issue of their compensability or relation to the compensable injury was not before the Board at the time it was considering Ms. Wheeler's PPD award. Indeed, not even Dr. Guberman, the evaluator upon whom Ms. Wheeler relies, attributed the herniated or bulging discs to the compensable injury or considered them in recommending an impairment rating. As such, we need not perform an analysis of this claim under *Moore*, as Ms. Wheeler suggests, as the issue of compensability is not before us.

As noted by the Board, this case comes down to the impairment ratings of Drs. Langa and Guberman. In reviewing their reports, we simply cannot find that the Board was wrong in relying on Dr. Langa's report. While Ms. Wheeler claims that Dr. Langa failed to comply with the *Guides*, we find no evidence of noncompliance. Ms. Wheeler's claims in this regard are predicated on considering the herniated and bulging discs as part of her compensable injury, which we decline to do.

---

[3] Pursuant to West Virginia Code § 23-4-1g(a), in part, "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted."

There was no medical evidence submitted to support any range of motion abnormalities in Ms. Wheeler's thoracic spine. Although she points to a physical therapy record which indicates that an extension measurement for Ms. Wheeler's thoracic spine showed a 50% loss of range of motion, that measurement was performed shortly after the injury and the other physical examinations performed after that do not indicate range of motion abnormalities. Simply put, this sole record indicating some deficits, when viewed in light of the other evidence of record, does not support Ms. Wheeler's claims that she has permanent range of motion deficits resulting from her compensable injury. Based on the foregoing, we find no error in the Board's decision to find that Dr. Langa's opinion that Ms. Wheeler had no ratable impairment attributable to her thoracic spine was more persuasive than Dr. Guberman's opinion.

Lastly, contrary to Ms. Wheeler's argument, she is not entitled to the matter being resolved in her favor pursuant to West Virginia Code § 23-4-1g, as the Board did not find that the reports of Dr. Langa and Dr. Guberman were of equal evidentiary weight. Given the Board's findings, we cannot find that it erred in granting Ms. Wheeler a 1% PPD award in accordance with Dr. Langa's recommendation. Accordingly, we affirm the Board's August 23, 2023, order.

Affirmed.

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear