IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

JOHN JUSZCZAK,
Claimant Below, Petitioner

FILED
October 24, 2025

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

v.) No. 25-ICA-106        (JCN: 2021004229)

ROB JUSZCZAK CONSTRUCTION,
Employer Below, Respondent

## MEMORANDUM DECISION

Petitioner John Juszczak ("the claimant") appeals the February 14, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Rob Juszczak Construction ("the employer") filed a response.[1] The claimant filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which 1) denied authorization for a referral to a shoulder specialist; 2) denied authorization for an MRI of the right shoulder; and 3) denied authorization for a right shoulder subacromial injection.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 13, 2020, the claimant was injured while working for the employer, when an excavator swung and hit him, throwing him onto the ground from the back of a truck. The claimant filed an Employees' and Physicians' Report of Occupational Injury or Disease dated July 13, 2020, indicating that he injured his ribs when he was struck by an excavator at work.[2]

---

[1] The claimant is represented by M. Jane Glauser, Esq. The employer is represented by Jeffrey B. Brannon, Esq.

[2] The claim administrator issued an order dated July 16, 2021, holding the claim compensable for multiple rib fractures. By Office of Judges' ("OOJ") Decision dated July 12, 2022, bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome were added as compensable diagnoses in the claim. By Memorandum Decision dated November 18, 2022, this Court affirmed the OOJ's Decision.

On April 14, 2020, the claimant underwent an upper extremity EMG, revealing severe right carpal tunnel syndrome and moderate left carpal tunnel syndrome. There was evidence of mild cubital tunnel syndrome on the right and borderline cubital tunnel syndrome on the left. There was no evidence of cervical paraspinal involvement.

The claimant was seen by Frank Grisafi, M.D., on April 14, 2020, for complaints of cervical pain radiating into his shoulder and pain and numbness in his right upper extremity following a work injury. The claimant broke multiple ribs as a result of the accident and developed symptoms radiating down both arms. At the time of the visit, the claimant complained of constant numbness and tingling in the ulnar two digits of his right upper extremity that extended into his forearm. He also reported weakness in his hands and reduced grip strength. A cervical MRI showed broad-based disc bulging causing central stenosis and severe bilateral neuroforaminal narrowing at C5-C6 and C6-C7, while an upper extremity EMG revealed bilateral carpal tunnel syndrome. Dr. Grisafi believed the claimant had ulnar nerve compression at the wrist or elbow, and he recommended a repeat upper extremity EMG/NCV study to further evaluate the claimant's pathology.

On May 20, 2021, the claimant was evaluated by Chuan Fang Jin, M.D. The claimant complained of pain in his right shoulder blade and upper back and numbness and tingling in his hands. Dr. Jin's impression was a healed crush injury with multiple rib fractures, right hand numbness, and preexisting degenerative arthrosis of the spine with electrodiagnostic evidence of bilateral radiculopathy. Dr. Jin opined that the claimant had not yet reached maximum medical improvement ("MMI") as there was still room for improvement in his symptoms and function. Dr. Jin recommended repeat x-rays to evaluate the status of the claimant's condition, a neurological or orthopedic consultation, and physical therapy ("PT").

The claimant underwent an upper extremity EMG on September 16, 2021, revealing electrodiagnostic evidence of bilateral median mononeuropathy at the wrist and bilateral ulnar mononeuropathy at the elbow. There was no evidence of thoracic outlet compression, a brachial plexus lesion, or cervical radiculopathy.

On February 28, 2022, the claimant was seen by Dr. Michael Singh, M.D., for pain in his shoulders, arms, and hands; tingling and numbness in his hands; right shoulder pain; and difficulty driving. The claimant reported an immediate onset of neurologic symptoms after sustaining blunt trauma to his chest, shoulders, arms, and neck following a work injury in January of 2020. Dr. Singh diagnosed the claimant with blunt trauma to the chest, shoulders, arms, and neck, causing immediate neurologic symptoms. He recommended PT, a neurology consult, and an MRI of the right and left plexus.

The claimant followed up with Dr. Singh on June 20, 2022. The claimant complained of pain, tingling, and numbness in his shoulders, arms, and hands; right

shoulder pain; and difficulty driving. He reported no issues prior to the work injury. Dr. Singh believed the claimant was suffering from chronic musculoskeletal pain. Dr. Singh noted that the claimant's range of motion had improved with PT, and he recommended additional PT.

On September 23, 2022, the claimant was seen by Erek Lam, M.D., for a second opinion. The claimant complained of hand numbness in the 4th and 5th digits of both hands and mild weakness in both hands. The claimant denied any neurological symptoms prior to his work injury. Dr. Lam found that the claimant's physical examination was most suggestive of bilateral ulnar neuropathy, left greater than right, and bilateral carpal tunnel syndrome. Dr. Lam's assessment was bilateral ulnar neuropathy, bilateral carpal tunnel syndrome, and a history of traumatic injury. Dr. Lam recommended that the claimant see an orthopedic surgeon for treatment of his bilateral ulnar neuropathy and carpal tunnel syndrome.

By correspondence dated February 28, 2024, the claimant's counsel requested that the claimant be referred to Albert Lin, M.D., a shoulder specialist, based upon a February 27, 2024, letter from Robert Kaufmann, M.D., wherein he requested that the claimant be referred to Dr. Lin for further treatment. The claim administrator issued an order dated March 15, 2024, denying authorization for a referral to a shoulder specialist, Dr. Lin, based upon a finding that the request was neither medically necessary nor reasonably required to treat a compensable condition. The claimant protested this order.

On March 19, 2024, Marcus Cervantes, M.D., evaluated the claimant. At the time of Dr. Cervantes' evaluation, the claimant complained of pain in both hands, both elbows, and his right shoulder. He also continued to complain of numbness and tingling in the bilateral fourth and fifth digits. Based upon his physical examination of the claimant and a review of the available medical records, Dr. Cervantes found the claimant to be at MMI and in need of no further treatment. Dr. Cervantes noted that the claimant's treating surgeon, Dr. Kaufmann, had not recommended any more treatment for the right or left upper extremity.

The claimant began treating with Damian Rispoli, M.D., on July 8, 2024. The claimant presented with complaints of right greater than left shoulder pain, and he reported an acute onset of bilateral shoulder pain following a work injury. Dr. Rispoli noted that, when asked to point to the area of maximal tenderness, the claimant pointed to the posterior inferior aspect of his right shoulder and a lateral subacromial location in his left shoulder. X-rays of the claimant's shoulders performed on July 8, 2024, revealed enthesopathic changes to the greater tuberosity bilaterally and rim osteophyte formation on the right greater than left. The assessment was bilateral shoulder pain. Dr. Rispoli noted that the claimant had radiographic evidence of rotator cuff pathology with superior migration on

the right and arthritic changes bilaterally, and he recommended PT for rotator cuff rehabilitation, range of motion, scapular rehabilitation, and posterior capsular stretching.

On August 7, 2024, the claimant was seen by Dr. Rispoli, who noted that the claimant reported no improvement with a home PT program. Dr. Rispoli assessed rotator cuff arthropathy of both shoulders, and he noted that the claimant had imaging evidence of superior migration in the right shoulder with arthritic changes. Dr. Rispoli recommended a right shoulder MRI for further evaluation.

An MRI of the claimant's right shoulder was performed on September 5, 2024, revealing chronic full-thickness tearing of the supraspinatus retracted to the level of the glenoid with chronic moderate muscular atrophy, moderate osteoarthrosis, and suspected tendinopathy of the proximal biceps without evidence of tearing. The claim administrator issued an order dated September 5, 2024, which denied authorization for an MRI of the right shoulder based upon a finding that the request was neither medically necessary nor reasonably required to treat a compensable condition. The claimant protested this order.

On September 9, 2024, the claimant followed up with Dr. Rispoli to discuss the MRI findings. Dr. Rispoli noted that the claimant's right shoulder MRI showed early degenerative changes consistent with early rotator cuff arthropathy and a tear of the right supraspinatus tendon extending from the anterior infraspinatus to the upper subscapularis with significant atrophy in the supraspinatus. Dr. Rispoli assessed the claimant with rotator cuff arthropathy of the right shoulder, a right shoulder rotator cuff tear, right biceps tendinitis, and arthritis of the left acromioclavicular joint. Dr. Rispoli recommended a right shoulder steroid injection. The second treatment recommendation was arthroscopic partial versus complete repair of the right shoulder rotator cuff pathology and biceps tenotomy with open subpectoral biceps tenodesis and likely distal clavicle resection. The last treatment option was a reverse total shoulder arthroplasty. Dr. Rispoli opined that the claimant likely had some degenerative changes prior to his compensable injury, however, he noted that his shoulder was completely asymptomatic prior to his injury. The claimant was seen by Dr. Rispoli on September 30, 2024, for a right shoulder steroid injection.

The claim administrator issued an order dated October 8, 2024, denying authorization for a right shoulder subacromial injection based upon a finding that the request was neither medically necessary nor reasonably required. The claimant protested this order.

On February 14, 2025, the Board affirmed the claim administrator's orders denying authorization for a referral to a shoulder specialist, an MRI of the right shoulder, and a right shoulder subacromial injection. The Board found that the claimant failed to establish that the requested MRI, referral to Dr. Lin, and right shoulder injection were medically necessary or reasonably required for treatment of the compensable injury. The claimant now appeals the Board's order.

4

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

The claimant argues that the preponderance of the evidence establishes that his shoulders were asymptomatic prior to the injury and there is no other explanation for his shoulder symptoms. The claimant also contends that although the complexity of the injury made it difficult for the medical treatment providers to diagnose the shoulder complaints, these complaints had been noted since the time of the injury. The claimant further argues that, under Code of State Rules § 85-20-6 (2006), the requested MRI and referral to a shoulder specialist are permitted and are reasonably required for treatment of the compensable injury. We disagree.

Here, the Board found that the claimant failed to show by a preponderance of evidence that the requested treatments are medically necessary and reasonably required for treatment of the compensable injury. The Board noted that all requests related to the claimant's right shoulder and, further, that the right shoulder is not a compensable component of the claim. Therefore, the Board found that "based upon the evidence of record, it cannot be found that the requests for referral to a shoulder specialist, a right shoulder MRI, and/or a right shoulder injection are medically necessary and reasonably required for treatment of the compensable injury."

The claimant argues that the Board should be reversed because he consistently complained of shoulder symptoms, and that he cannot obtain a diagnosis without testing.

The claimant cites *Weese v. Harry Green Chevrolet*, No. 23-340, 2025 WL 1116148 (W. Va. Apr. 15, 2025) (memorandum decision) wherein the Supreme Court of Appeals of West Virginia (SCAWV) ruled that because the claimant was diagnosed with a probable herniated disc before the claim was held compensable for a "low back injury," that the claimant was entitled to an authorization for a lumbar MRI. The SCAWV noted that a low back injury is a broad ruling, and the claim administrator was on notice that the claimant might have a herniated disc. However, this case is distinguishable from *Weese*. In this claim, the request for shoulder treatment was made four years after the compensable injury; the claimant was previously diagnosed with an arthritic condition of rotator cuff arthropathy of both shoulders by Dr. Rispoli on August 7, 2024; and, unlike *Weese*, no condition of the right shoulder has been held compensable. Under the facts of this case, it is incumbent that the claimant establish that he sustained a compensable shoulder injury prior to receiving authorized treatment.

Upon review, we conclude that the Board was not clearly wrong in finding that the claimant failed to show by a preponderance of evidence that the requested treatments are medically necessary and reasonably required for treatment of the compensable injury. As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders. We note, as did the Board, that the claimant is not precluded from requesting the addition of diagnoses related to his shoulders as compensable components of the claim, and then seeking treatment for the compensable condition(s).

Accordingly, we affirm the Board's February 14, 2025, order.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

6