# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DONALD SMITH, II,**
**Claimant Below, Petitioner**

**FILED**
**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-236**        (JCN: 2023001949)

**MARSHALL COUNTY COAL RESOURCES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donald Smith, II, appeals the May 10, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Marshall County Coal Resources, Inc., ("MCCR") filed a timely response.[1] Mr. Smith filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Mr. Smith a 1% permanent partial disability ("PPD") award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 25, 2022, Mr. Smith was seen at the Wetzel County Hospital emergency room with complaints of right shoulder pain. Mr. Smith indicated that he was carrying a container of hydraulic fluid at work when he felt a pop in his right shoulder, and he developed pain in his right shoulder following the incident. X-rays of the right shoulder, performed on the same day, revealed no evidence of fracture. Mr. Smith was diagnosed with a right shoulder strain.

Mr. Smith filed an Employees' and Physicians' Report of Occupational Injury or Disease dated June 25, 2022, indicating that he injured his right arm and shoulder while restacking five gallons of oil on a skid. The physician's portion of the report was completed by a medical provider at Wetzel County Hospital on the day of the injury and indicated that Mr. Smith had sustained an occupational injury resulting in a right shoulder strain. The

---

[1] Mr. Smith is represented by Sandra K. Law, Esq. MCCR is represented by Aimee M. Stern, Esq.

claim administrator issued an order dated July 25, 2022, holding the claim compensable for a sprain of the right shoulder joint.

On July 18, 2022, Mr. Smith was seen by Tracy Myers, APRN, for complaints of right shoulder pain and weakness. APRN Myers recommended physical therapy and a right shoulder MRI to rule out a tear. Mr. Smith underwent an MRI of his right shoulder on August 7, 2022. The MRI revealed a full-thickness tear of the supraspinatus tendon with mild muscular atrophy, tendinopathy of the anterior infraspinatus and upper subscapularis, suspected tendinopathy of the proximal long head of the biceps, and mild joint space narrowing and chronic posterior labral degeneration.

Mr. Smith was seen by Brook Morgan, PA-C, at Parkersburg Orthopedics on August 24, 2022. Mr. Smith reported no issues with his right shoulder prior to the compensable injury. Based on the August 7, 2022, MRI, PA-C Morgan assessed Mr. Smith with a right rotator cuff tear and recommended a right shoulder arthroscopy with subacromial decompression and mini open rotator cuff repair. Mr. Smith was placed off work, and by letter dated August 24, 2022, the provider requested authorization for surgery. Ronald Fadel, M.D., drafted a utilization review report dated August 27, 2022, recommending that the request for arthroscopic right shoulder surgery with subacromial decompression and mini open rotator cuff repair be authorized in the claim.

On October 17, 2022, Mr. Smith underwent a right shoulder arthroscopy with subacromial decompression and mini open rotator cuff repair performed by George Herriott, M.D. Dr. Herriott diagnosed Mr. Smith with a traumatic complete tear of the right rotator cuff and indicated that Mr. Smith was temporarily and totally disabled from October 17, 2022, through January 17, 2023. Mr. Smith was seen by PA-C Morgan for post-operative follow-up on October 26, 2022. Mr. Smith reported that he was doing well and no longer taking pain medications. PA-C Morgan recommended physical therapy. Mr. Smith underwent physical therapy from November 1, 2022, through February 16, 2023.

Mr. Smith was seen by Dr. Herriott for a post-operative follow-up on November 22, 2022. Dr. Herriott recommended continued physical therapy. In a return-to-work slip dated November 23, 2022, Dr. Herriott indicated that Mr. Smith was to remain off work until January 9, 2023. On December 22, 2022, Mr. Smith was seen by Dr. Herriott for a follow-up. Mr. Smith developed an infection following his right shoulder arthroscopy which required irrigation and debridement on December 11, 2022. Mr. Smith reported that his range of motion was steadily improving, and he did not have any real discomfort in the right shoulder.

On January 5, 2023, Mr. Smith followed up with Dr. Herriott for a wound check. Mr. Smith stated that his right shoulder was feeling better, and he was now able to actively raise his right arm above his head without significant discomfort. He also reported improved strength in the right shoulder. Dr. Herriott instructed Mr. Smith to continue with

physical therapy and advance his activities as tolerated. Mr. Smith was seen by Patrick Corbitt, PA-C, and Dr. Herriott for a follow-up on January 26, 2023. Mr. Smith reported increased right shoulder aching, but he denied any increased redness, swelling, warmth or pain along the right shoulder incision site. Physical examination revealed full active and passive range of motion of the right shoulder and no discernible weakness.

Mr. Smith followed up with Dr. Herriott on February 21, 2023, and reported very little discomfort in the right shoulder. Mr. Smith stated that he still had some weakness in the right shoulder, and he did not feel that he was ready to return to his previous job. A physical examination of the right shoulder revealed full active range of motion for flexion abduction and external rotation to about 60 degrees with the arms at the side, but internal rotation was somewhat limited. Mr. Smith was instructed to transition to a home exercise program.

On February 22, 2023, Dr. Herriott completed a Physical Work Capabilities form and an Attending Physician's Report. Dr. Herriott indicated that Mr. Smith had not reached maximum medical improvement ("MMI") and would need to remain off work until after his next follow-up appointment. Dr. Herriott stated that Mr. Smith was temporarily and totally disabled from February 21, 2023, through May 8, 2023.

Prasadarao Mukkamala, M.D., performed a medical evaluation of Mr. Smith on April 10, 2023. Dr. Mukkamala concluded that Mr. Smith's compensable right shoulder injury was at MMI. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993), ("*Guides*"), Dr. Mukkamala found Mr. Smith with 1% upper extremity impairment for reduced right shoulder flexion and 1% upper extremity impairment for right shoulder abduction. According to Dr. Mukkamala, 2% upper extremity impairment converts to a 1% whole person impairment ("WPI"), which he recommended for the compensable right shoulder injury.

On May 2, 2023, Mr. Smith was seen by Dr. Herriott and reported that he was doing well. Mr. Smith stated that he did not feel that he had any significant functional limitations or weakness in the right shoulder. Physical examination of the right shoulder revealed full active range of motion in all planes. Strength testing showed 5/5 strength in abduction, flexion, internal rotation, and external rotation. There was no tenderness on palpation of the right shoulder. Dr. Herriott released Mr. Smith to return to work without restrictions on May 8, 2023.

Bruce Guberman, M.D., evaluated Mr. Smith on July 5, 2023. Dr. Guberman noted that Mr. Smith's right shoulder symptoms had improved but had not resolved. Specifically, Dr. Guberman noted that Mr. Smith continued to have persistent tenderness, pain, and range of motion abnormalities in the right shoulder. Dr. Guberman found Mr. Smith at MMI. Using the *Guides*, Dr. Guberman found Mr. Smith with 3% upper extremity impairment for reduced flexion of the right shoulder, 2% upper extremity impairment for

3

reduced abduction of the right shoulder, and 1% upper extremity impairment for reduced internal rotation of the right shoulder. According to Dr. Guberman, the claimant's upper extremity impairments converted to 4% WPI for the compensable right shoulder injury.

On January 5, 2023, the Board affirmed the claim administrator's order granting Mr. Smith a 1% PPD award for his compensable right shoulder injury. The Board found that Mr. Smith failed to show by a preponderance of evidence that he has more than 1% whole person impairment related to the compensable injury. Mr. Smith now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Smith argues that both Dr. Mukkamala and Dr. Guberman followed the *Guides*, and their findings differed only by slight differences in range of motion readings. Mr. Smith further argues that the Board did not make any finding that Dr. Guberman's evaluation was unreliable or had not followed the *Guides*, thus, the Board should have found that the reports were of equal weight and adopted Dr. Guberman's findings under West Virginia Code § 23-4-1g (2003).[2] We disagree.

_____

[2] West Virginia Code § 23-4-1g provides, in relevant part, "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted."

The Board found that the weight of the evidence supports Dr. Mukkamala and the claim administrator's finding that Mr. Smith has 1% whole person impairment related to the compensable injury. The Board noted that Dr. Mukkamala's range of motion findings were consistent with those of Dr. Harriott, Mr. Smith's treating orthopedic surgeon. Thus, the Board found that Mr. Smith failed to show by a preponderance of evidence that he has more than 1% whole person impairment related to the compensable injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Smith failed to show by a preponderance of evidence that he has more than 1% whole person impairment related to the compensable injury. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding that the weight of the evidence supports Dr. Mukkamala's findings.

Accordingly, we affirm the Board's May 10, 2024, order.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear