# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-22**      (JCN: 2023014604)

**HAROLD G. ELSWICK II,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Blackhawk Mining, LLC ("Blackhawk") appeals the December 16, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Harold G. Elswick II did not file a response.[1] The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Elswick a 9% PPD award, and instead granting an additional 4% PPD award for a total award of 13% PPD.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

A series of Employees' and Physicians' Reports of Occupational injury were completed in this claim. First, Mr. Elswick completed an Employees' and Physicians' Report of Occupational Injury form dated January 16, 2023, which indicates that he sustained an injury at work that day from a fall.[2] The physician's section of the form states that Mr. Elswick sustained an injury to the neck as a direct result of an occupational injury. A 24-Hour Investigation Report completed by Blackhawk on the same date indicates that Mr. Elswick was getting out of an excavator when he lost his balance and fell off the tracks to the ground. The report listed the body parts affected as the head, back, and neck.

Mr. Elswick was treated at Charleston Area Medical Center ("CAMC") on the date of the injury by William Brash II, D.O. The diagnosis was neck strain, back pain, neck

---

[1] Blackhawk is represented by Billy R. Shelton, Esq., Shelton, Branham, and Holbert, PLLC.

[2] The Employees' Report of Occupational Injury or Disease form lists the employer as Rockwell Mining, LLC.

pain, and shoulder pain. On January 24, 2023, Mr. Elswick completed a second Employees' and Physicians' Report of Occupational Injury form. The injured body parts were listed as the neck, shoulders, and back. The physicians' portion of the form was not completed. On January 27, 2023, the physicians' portion of a third Employees' and Physicians' Report of Occupational Injury was completed. This form lists the injured body parts as the cervical spine, left shoulder, and right knee, and indicates that Mr. Elswick's condition was the direct result of an occupational injury.

On February 1, 2023, the claim administrator issued an order that held the claim compensable for sprain of unspecified site of right knee; sprain of unspecified muscle, fascia, and tendon at the shoulder, upper arm, and left arm; and strain of muscle, fascia, and tendon at neck level.

Prasadarao Mukkamala, M.D., evaluated Mr. Elswick at the request of the claim administrator and issued a report dated June 7, 2023. Mr. Elswick reported pain in the neck with radiation to the left upper extremity, pain at the right knee, and pain in the left shoulder. Dr. Mukkamala diagnosed right knee sprain, left shoulder sprain, and cervical strain. Dr. Mukkamala opined that all of these diagnoses are causally related to the compensable injury of January 16, 2023, but indicated that Mr. Elswick has preexisting cervical degenerative disc disease, degenerative condition of the right knee, and a degenerative condition of the left shoulder. Dr. Mukkamala concluded that Mr. Elswick was unable to return to his preinjury unrestricted position and stated that he would be limited to the light physical demand level. Dr. Mukkamala placed Mr. Elswick at maximum medical improvement ("MMI") for the compensable injuries and indicated that he would not require further treatment.

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment (*4th ed. 1993) ("*Guides*"), Dr. Mukkamala assessed Mr. Elswick's permanent impairment. For the right knee, Dr. Mukkamala used Table 41 on page 78 of the *Guides* to assess 4% whole person impairment ("WPI") for mild limitation of motion. For the left shoulder, Dr. Mukkamala assessed 1% WPI. For the cervical spine, Dr. Mukkamala assessed 10% WPI for loss of range of motion, and a 4% WPI for a Category II-B classification from Table 75, at page 113 of the *Guides*. Dr. Mukkamala combined these impairments to a total of 14% WPI pursuant to the Range of Motion Model. Dr. Mukkamala classified Mr. Elswick under Cervical Category II of Table § 84-20-E and adjusted the rating to 8% WPI to fit the category. Dr. Mukkamala then apportioned 4% WPI due to preexisting noncompensable degenerative spondyloarthropathy and 4% WPI to the compensable injury. In doing so, Dr. Mukkamala stated that Mr. Elswick had no prior injuries or symptoms to the neck prior to the compensable injury, but that judging from the mechanism of injury, he sustained a soft tissue injury which had resolved, and that ongoing symptoms were due to the preexisting noncompensable degenerative spondyloarthropathy. Finally, Dr. Mukkamala combined the 1% WPI to the left shoulder,

the 4% WPI to the right knee, and the 4% WPI to the cervical spine for a total of 9% WPI from the compensable injury.

By order dated June 13, 2023, the Board granted Mr. Elswick a 9% PPD award based on Dr. Mukkamala's report. Mr. Elswick protested this order to the Board.

On December 7, 2023, Bruce Guberman, M.D., performed an evaluation of Mr. Elswick. Dr. Guberman's impression was chronic posttraumatic musculoligamentous strain of the cervical spine, left C7 radiculopathy documented by electrodiagnostic studies; chronic posttraumatic sprain/strain of the left shoulder with partial thickness rotator cuff tear; and chronic posttraumatic sprain/strain of the right knee with medial meniscal tear and tear of the ACL, status post total knee arthroplasty on October 13, 2023. Dr. Guberman opined that Mr. Elswick had reached MMI for the cervical spine and left shoulder injuries. Dr. Guberman opined that if the right knee total arthroscopy was considered compensable then Mr. Elswick had not yet reached MMI. Dr. Guberman's examination revealed no acute evidence of radiculopathy.

Dr. Guberman opined that Mr. Elswick had a total cervical WPI of 10% from the Range of Motion Model of the *Guides*, which he reduced to 8% WPI after placing Mr. Elswick in Cervical Category II of Rules 20. Dr. Guberman also said that Mr. Elswick had a 2% WPI for the left shoulder, and if the right knee arthroplasty was not compensable, then a total WPI of 4% for the right knee. Dr. Guberman stated that a portion of Mr. Elswick's cervical WPI should be apportioned for pre-existing impairment. He noted that imaging studies showed preexisting degenerative changes, which indicate Mr. Elswick had some prior impairment of the cervical spine. In apportioning for the cervical spine, Dr. Guberman explained that prior to the compensable injury Mr. Elswick would not have been placed in Cervical Category II of Rule 20. He noted that the minimum impairment under Cervical Category II is 5%, which he apportioned to the compensable injury. Of the remaining 3% (from the 8% Cervical Category II WPI), Dr. Guberman apportioned 1.5% WPI to the compensable injury and 1.5% for the preexisting impairment. Dr. Guberman then rounded up the 1.5% WPI for the compensable injury to a 2% and rounded down the 1.5% WPI for preexisting impairment to 1%. Dr. Guberman did not apportion for the left shoulder or the right knee. Dr. Guberman concluded that Mr. Elswick had a combined 13% WPI for the compensable cervical, left shoulder, and right knee injuries.

By order dated December 16, 2024, the Board reversed the claim administrator's order and instead granted Mr. Elswick a 13% PPD award. The Board found that Dr. Mukkamala's apportionment was arbitrary and adopted Dr. Guberman's recommendation of 13% WPI. It is from this order that Blackhawk now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Blackhawk argues that the Board was clearly wrong in granting Mr. Elswick an additional 4% PPD award based on the arbitrary opinion of Dr. Guberman. Further, Blackhawk argues that the Board accepted Dr. Guberman's rounding up of his impairment rating for the cervical spine without any reasoning or explanation. We disagree.

In Syllabus Point 6 of *Duff v. Kanawha County Commission*, 250 W. Va. 510, 905 S.E.2d 528 (2024), the Supreme Court of Appeals of West Virginia held that:

Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant has a "definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

Here, the Board concluded that the evidence establishes that Mr. Elswick has a 13% WPI for the compensable injury. The Board noted that both Dr. Mukkamala and Dr. Guberman found a total of 8% WPI using Rule 20. However, the Board found that Dr. Mukkamala's apportionment of 4% to preexisting degenerative changes lacks probative value. In contrast, the Board found that Dr. Guberman's apportionment of 1% to preexisting degenerative changes, and 1.5%, which he rounded up to 2% for the

4

compensable cervical spine injury was more reasoned and rational.[3] We note that physicians are able to exercise clinical judgment when apportioning impairment, and such ratings rounding half percentages to the nearest whole number have been accepted when supported by medical rationale and consistent with the evidentiary record. *See Blackhawk Mining, LLC v. Blankenship*, No. 22-0065, 2023 WL 5978292 (W. Va. Sept 14, 2023) (memorandum decision) (noting that physician found that 70% of 25% was 17.5% and rounded up to produce 18% impairment rating). Thus, the Board concluded that Dr. Guberman's report is reliable and adopted his recommendation of 13% WPI.

Although Blackhawk argues that Dr. Guberman's report was arbitrary, the Board specifically found that Dr. Guberman's apportionment is more reasoned and rational, and meets the standard set forth in *Duff*. We will defer to the Board's credibility determinations and weighing of the evidence. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence. . . .").

Upon review, we conclude that the Board was not clearly wrong in reversing the claim administrator's order and granting Mr. Elswick a 13% PPD award based on Dr. Guberman's report. As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding that Mr. Elswick established that he had a 13% WPI for the compensable injuries.

Accordingly, we affirm the Board's December 16, 2024, order.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[3] We note that the *Guides* contemplate rounding up percentages of apportionment in Section 2.2 on page 9, which states "[a] final estimated whole person impairment percent, whether it is based on the evaluation of one organ system or several organ systems, may be rounded to the nearer of the two nearest values ending in 0 or 5."