IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ALPHA METALLURGICAL RESOURCES, INC.,**
Employer Below, Petitioner

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-65**      (JCN: 2021009730)

**ANDREW KINCAID III,**
Claimant Below, Respondent

**MEMORANDUM DECISION**

Petitioner Alpha Metallurgical Resources, Inc., ("Alpha") appeals the January 21, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Andrew Kincaid III filed a response.[1] Alpha filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted an 8% permanent partial disability ("PPD") award, and instead granted an additional 5% PPD award for a total PPD award of 13%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Kincaid filed an Employees' and Physicians' Report of Occupational Injury or Disease dated November 13, 2020. Mr. Kincaid indicated that he injured his lower back on November 12, 2020, when he ran over a rock while operating a shuttle car and was jolted. Mr. Kincaid was seen on November 12, 2020, at Raleigh General Hospital, where medical personnel completed the Physicians' section of the claim application. The diagnosis listed was lumbar spine strain with radiculopathy.

On November 19, 2020, the claim administrator issued an order holding the claim compensable for lumbar sprain.[2] On December 14, 2020, Mr. Kincaid underwent a lumbar

---

[1] Alpha is represented by H. Dill Battle III, Esq., Spilman Thomas & Battle, PLLC. Mr. Kincaid is represented by Linda N. Garrett, Esq., Bailey Javins & Carter, LC.

[2] No orders regarding the addition of compensable conditions to the claim were noted by the Board, however, the reports of Drs. Mukkamala and Manson identify the compensable conditions as strain of muscle, fascia and tendon of lower back, initial encounter; and other intervertebral disc displacement, lumbar region.

1

MRI, revealing mild encroachment on the inferior aspects of the neural foramina at L4-L5 and mild encroachment inferior aspect of the right neural foramen at L5-S1.

On May 13, 2021, Mr. Kincaid underwent surgery performed by Rajesh Patel, M.D. The operative procedure was a partial laminectomy of L4 for decompression of cauda equina, left L4 nerve, and partial laminectomy of L5 for decompression of cauda equina, left L5 nerve, for the diagnoses of lateral recess narrowing at L4-L5, lumbar disc bulging at L4-L5, lumbar sprain, left L5 radiculitis, left SI radiculitis, and lumbar facet sprain.

Mr. Kincaid underwent a second lumbar MRI on September 23, 2021, revealing interval left laminectomy at L4-L5, bilateral foraminal encroachment greater on the left than right side at L4-L5, and the remaining levels were stable and demonstrated no significant canal or foraminal stenosis. A third lumbar MRI performed on March 2, 2022, revealed left L4-L5 hemilaminectomy defect and broad-based posterior protrusion of L4-L5 intervertebral disc, along with marginal osteophytes, resulting in moderate bilateral foraminal stenosis.

On June 17, 2022, Mr. Kincaid was seen by Louis Bivona, M.D., for low back and left lower extremity pain. Dr. Bivona recommended an L4 nerve root block to determine the diagnosis and to hold off on surgery until this was completed. On July 29, 2022, Dr. Bivona saw Mr. Kincaid and noted that he received good relief from the L4 nerve root block on the left. Dr. Bivona stated it was reasonable to try an L4-L5 foraminotomy on the left given his symptoms and findings on MRI. On September 7, 2022, Mr. Kincaid underwent a revision of the L4-L5 foraminotomy, performed by Dr. Bivona. On October 21, 2022, Dr. Bivona saw Mr. Kincaid for follow-up from his revision surgery. Mr. Kincaid reported that he was doing much better, and the back pain seemed to be resolving a bit, but he continued to have pain down the left leg, with some right foot and ankle numbness.

Mr. Kincaid was evaluated by Prasadarao Mukkamala, M.D., on May 22, 2023. Dr. Mukkamala identified the compensable conditions as strain of muscle, fascia and tendon of lower back, initial encounter, and other intervertebral disc displacement, lumbar region. Dr. Mukkamala diagnosed lumbar strain superimposed upon preexisting noncompensable degenerative spondyloarthropathy/degenerative disc disease. Dr. Mukkamala opined that degenerative spondyloarthropathy was responsible for most of Mr. Kincaid's current symptoms. Dr. Mukkamala noted that Mr. Kincaid was asymptomatic prior to the injury. Dr. Mukkamala found that Mr. Kincaid's compensable injury was at maximum medical improvement ("MMI"). Dr. Mukkamala evaluated Mr. Kincaid's permanent impairment using the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("*Guides*") and the West Virginia Code of State Rules § 85-20 (2006) ("Rule 20"). Using the *Guides*, Dr. Mukkamala found that Mr. Kincaid had 6% whole person impairment ("WPI") for reduced range of motion, and 12% WPI from Table 75; for a combined 17% WPI. Under Rule 20, Dr. Mukkamala opined that Mr. Kincaid fell

into Lumbar Category III with an allowable impairment range of 10-13%, and he adjusted the 17% WPI to 13% WPI. Dr. Mukkamala opined that, even though the preexisting spondyloarthropathy was asymptomatic prior to the injury, this condition was primarily responsible for the ongoing symptoms; thus, he apportioned 5% WPI due to preexisting degenerative spondyloarthropathy and recommended the remaining 8% WPI for the compensable injury.

On November 13, 2023, Bruce Guberman, M.D., evaluated Mr. Kincaid. Dr. Guberman's impression was chronic post-traumatic musculoligamentous strain of the lumbar spine with disc herniation and radiculopathy due to the work injury of November 12, 2020, status-post partial laminectomy of L4-L5 for decompression of cauda equina and left L4 and L5 nerve roots on May 13, 2021, and status-post revision of L4-5 foraminotomy on September 7, 2022. Mr. Kincaid reported no prior history of injury or any symptoms in regard to his lumbar spine prior to the injury. Dr. Guberman found Mr. Kincaid to be at MMI. Using the *Guides*, Dr. Guberman found that Mr. Kincaid had 9% WPI for range of motion abnormalities, and 12% WPI under Table 75 for a combined total of 20% WPI. Under Rule 20, Dr. Guberman found that Mr. Kincaid fell under Lumbar Category III from Table 85-20-C for an allowed impairment range of 10-13% WPI. Accordingly, the 20% impairment was adjusted to 13% WPI. Dr. Guberman found that, although Mr. Kincaid had evidence of degenerative changes on imaging studies present in part before the current injury, there was no history that he had any symptoms, trauma history, or stiffness or loss of motion of the lumbar spine, and no history of radicular pain, numbness, tingling, or weakness in his legs before the compensable injury. Dr. Guberman opined that no apportionment was necessary. As Mr. Kincaid already received an 8% impairment, Dr. Guberman recommended an additional 5% WPI due to the compensable injury.

Mr. Kincaid was evaluated by Hicks Manson, M.D., on June 28, 2024. Dr. Manson identified the compensable conditions as strain of muscle, fascia and tendon of lower back, initial encounter, and other intervertebral disc displacement, lumbar region. Dr. Manson diagnosed lumbar sprain with exacerbation of underlying spondylosis, and he opined that the lumbar MRIs showed underlying multilevel degenerative changes. Dr. Manson found Mr. Kincaid's compensable injuries to be at MMI. Using the *Guides*, Dr. Manson found that Mr. Kincaid had 14% WPI. Under Rule 20, Dr. Manson found that Mr. Kincaid fell into Lumbar Category III, which allows 10-13% WPI, and the 14% was adjusted to 13% WPI. Dr. Manson opined that Mr. Kincaid would have qualified to be placed in Category II, due to multilevel degenerative changes, present even prior to the injury, which would have allowed a 5-8% impairment, thus, he apportioned 5% of the total impairment to the preexisting lumbar spondylosis and the remaining 8% WPI to his work-related injury.

On January 21, 2025, the Board reversed the claim administrator's order, which granted an 8% PPD award, and instead granted an additional 5% PPD award for a total PPD award of 13%. The Board found that the preponderance of the medical evidence

3

establishes that Mr. Kincaid has 13% WPI related to the compensable injury. Alpha now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Alpha argues that a preponderance of evidence establishes that Mr. Kincaid was adequately compensated by the 8% PPD award granted for the soft tissue sprain/strain, which was superimposed on preexisting spinal degenerative changes. Alpha further argues that the medical evidence and Dr. Manson's report established that Mr. Kincaid has a definitely ascertainable impairment from preexisting lumbar spondylosis. We disagree.

Here, the Board determined that pursuant to *Duff*, Mr. Kincaid established by a preponderance of the evidence that he has 13% WPI related to the compensable injury. Further, the Board found that Dr. Guberman's report was the most reliable of record and was entitled to greater evidentiary weight than the reports from Dr. Mukkamala and Dr. Manson. The Board observed that there was no evidence that Mr. Kincaid had prior lumbar symptoms or treatment and that Dr. Mukkamala provided no acceptable explanation for his decision to apportion. Additionally, the Board found that Dr. Manson's reasoning was not valid or credible based on the medical evidence and the language of Rule 20.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Kincaid established that he suffered 13% WPI related to the compensable injury. Further, we conclude that the Board was not clearly wrong in finding that Dr. Guberman's report

4

was the most reliable report based on the medical evidence. The Board's decision explains that Dr. Mukkamala and Dr. Manson apportioned based solely on diagnostic findings obtained after the compensable injury, which contravenes the holding in *Duff*, and that there is no evidence that Mr. Kincaid had any treatment or symptoms at the lumbar spine prior to his injury in this claim. The Board appropriately found that Dr. Guberman's medical evaluation most accurately depicts Mr. Kincaid's impairment from the compensable injury.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order granting an 8% PPD award, and instead granting an additional 5% PPD award, for a total PPD award of 13%.

Accordingly, we affirm the Board's January 21, 2025, order.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White