IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

BLACKHAWK MINING, LLC,
**Employer Below, Petitioner**

**FILED**
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-315**          (JCN: 2024021812)

LARRY ALBRIGHT,
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Blackhawk Mining, LLC ("Blackhawk") appeals the July 8, 2025, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order and held Respondent Larry Albright's bilateral carpal tunnel syndrome ("CTS") compensable. Mr. Albright filed a response, and Blackhawk filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Albright was employed by Blackhawk in an underground coal mine where he operated underground machinery and performed general labor work. In 2002, Mr. Albright had a prior bilateral CTS claim, which was deemed compensable.[2] On December 4, 2002, Joby Joseph, M.D., conducted an EMG and NCV study and diagnosed Mr. Albright with mild bilateral CTS. The report stated Mr. Albright had no history of trauma, had experienced symptoms for approximately one to two years, and listed his weight as 265 pounds. On May 24, 2008, a diagnostic imaging report signed by Ricky Compton, M.D., stated Mr. Albright's right wrist showed evidence of a chronic appearing nonunited scaphoid fracture and mild degenerative joint disease. On June 5, 2013, Mr. Albright was

---

[1] Blackhawk is represented by Billy R. Shelton, Esq. Mr. Albright is represented by Donald C. Wandling, Esq.

[2] None of the compensability orders related to Mr. Albright's 2002 CTS claim are included in the record on appeal. However, it appears these documents were submitted to the Board because they are referenced in its July 8, 2025, order.

seen by Alan Koester, M.D., for treatment of right wrist pain and swelling, and Dr. Koester diagnosed aggravation of the scaphoid nonunion of the right wrist with advanced collapse.

On April 3, 2024, Glenn Goldfarb, M.D., performed an EMG test and diagnosed Mr. Albright with severe bilateral CTS. Dr. Goldfarb also reported that Mr. Albright weighed 314 pounds. On May 21, 2024, Mr. Albright was seen by Ted Jefferson, D.O., and reported numbness, weakness, tingling, burning, and shooting pain in his hands. Dr. Jefferson assessed bilateral osteoarthritis of the knees and bilateral CTS.

On May 28, 2024, Mr. Albright was seen by Roderick A. Young, II, M.D., and reported issues with his bilateral hands and wrists. Mr. Albright reported there was no acute injury and that he had experienced a gradual onset of symptoms over the last year that had worsened in the last six or more months. Mr. Albright complained of moderate pain and pins and needles sensation in his right and left hands and stated the pain was in the lateral palm and extended sometimes to the first, second, and third fingertips. He stated his symptoms were worse at night and after driving, and that he had a problem holding small objects. Dr. Young diagnosed Mr. Albright with bilateral CTS.

On September 26, 2024, Prasadarao B. Mukkamala, M.D., performed an independent medical examination ("IME") at the request of the claim administrator. Mr. Albright reported numbness in both hands and a loss of the ability to grip objects. He stated he had experienced these symptoms for a long time but was unable to tell Dr. Mukkamala exactly how long. Dr. Mukkamala determined that the sensory examination was unreliable because the findings on the date of this IME did not coincide with the examination findings on September 6, 2024.[3] When Dr. Mukkamala tapped over the median nerve at the wrist, Mr. Albright complained of electrical sensation at the place of tapping but no electrical sensation in the hand, which meant the Tinel's sign was negative in both hands. On the date of the IME, Mr. Albright was unable to grip but he demonstrated a grip strength of 30 pounds in both hands on September 6, 2024. Dr. Mukkamala stated that the discrepancy between the September 6, 2024, evaluation and IME evaluation raised the question of symptom magnification and/or malingering. Dr. Mukkamala opined that Mr. Albright had bilateral CTS but found it was not causally related to his occupational activities. Dr. Mukkamala acknowledged Mr. Albright's 2002 bilateral CTS diagnosis and opined that the worsening of his bilateral CTS from mild to severe over a period of more than 20 years was due to non-occupational factors such as obesity, diabetes, and residual Guillain-Barré syndrome.

On October 3, 2024, the claim administrator denied Mr. Albright's claim for bilateral CTS based on Dr. Mukkamala's IME. Mr. Albright protested this order. On

___

[3] It is unclear from the record and Dr. Mukkamala's report what examination occurred on September 6, 2024.

November 22, 2024, Mr. Albright was deposed and testified that he continuously used his hands daily in his work. He stated that he had worked for Blackhawk and other coal companies for thirty-four years and last worked on November 28, 2023. When he was last working, he was having problems with both of his hands, which included the ability to grip, weakness, and numbness. Mr. Albright stated he filed a previous compensable claim for CTS in 2002. He stated he experienced the same problems then, but that it was more severe now. He further testified that he did not seek treatment for his CTS in 2002, and he continued to work in and around coal mines and was able to perform his work. He stated he was never diagnosed with type 2 diabetes and had never sought treatment or taken medication for diabetes. He stated he was diagnosed with Guillain-Barré syndrome ten years prior, which caused paralysis and required him to be hospitalized for about a month. He stated he fully recovered, was able to return to work, and had not experienced any related symptoms since his recovery. Finally, he stated he currently weighs 300 pounds and weighed around 250 pounds when he was first diagnosed with CTS in 2002.

On March 6, 2025, Dr. Young was deposed and testified he first saw Mr. Albright on May 28, 2024, as a referral for an evaluation of his CTS. Dr. Young first became aware of Mr. Albright's prior CTS diagnosis at his appointment on February 3, 2025, and Mr. Albright stated he was approved for surgery, did not receive that surgery, and that his symptoms gradually worsened. Dr. Young stated he never saw the results of any nerve conduction studies that occurred in 2002, and, as a result, did not compare the 2002 nerve study to the 2024 study to determine if the severity of Mr. Albright's bilateral CTS had worsened. Dr. Young also testified that Mr. Albright's range of motion in both wrists was normal on his February 3, 2025, examination and there was no joint pain with movement. Dr. Young noted there was a bit of weakness with opposition of the thumb, right worse than left, but the movement of the fingers was essentially normal. Dr. Young indicated that a fracture or significant injury to the wrist could cause CTS, and he was not aware that Mr. Albright suffered a broken right wrist that required a cast in 2008. Finally, Dr. Young indicated that there are some medical conditions that can cause CTS, and he was aware that Mr. Albright had risk factors that might be seen in someone who has CTS that is not occupational.

On July 8, 2025, the Board issued an order reversing the claim administrator's order and held Mr. Albright's bilateral CTS compensable. It is from this order that Blackhawk now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

3

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Blackhawk asserts one assignment of error and argues the Board was clearly wrong in finding Mr. Albright's claim compensable for bilateral CTS. We disagree. Pursuant to West Virginia Code § 23-4-1(f) (2024),

a disease is considered to have been incurred in the course of, or to have resulted from, the employment only if it is apparent to the rational mind, upon consideration of all circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as a proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction[.]

In this case, the Board noted that Mr. Albright's work as a coal mine roof bolter required him to work with his hands continuously and on a daily basis. The Board found Dr. Young's opinion that Mr. Albright's work caused his CTS to be credible. The Board did acknowledge that Mr. Albright had several non-occupational risk factors for CTS, including obesity, a history of Guillain-Barré syndrome, and diabetes. However, the Board relied on Mr. Albright's testimony and the reports of Drs. Joseph and Goldfarb, which showed Mr. Albright weighed significantly less in 2002 when he was initially diagnosed with CTS; Mr. Albright's testimony that he fully recovered from Guillain-Barré syndrome after his diagnosis in 2023; and Mr. Albright's testimony stating he had never been

4

diagnosed with or received medical treatment for diabetes.[4] The Board also relied on Dr. Young's opinion that Mr. Albright's CTS was solely the result of his work activities.

Based on a review of the evidence, the Board did not commit error when it held that Mr. Albright met his burden of establishing that his bilateral CTS is related to his employment with Blackhawk. The Board addressed the six (6) factors listed in West Virginia Code § 23-4-1(f) for a compensable occupational disease claim. The Board noted that Mr. Albright had a compensable CTS claim in 2002, that Mr. Albright testified that he worked for Blackhawk and other coal companies for thirty-four years, that he last worked on November 28, 2023, for Blackhawk, and that he used his hands daily grasping tools, operating machinery, and gripping repeatedly during his employment. Pursuant to *Pioneer Pipe v. Swain*, 237 W. Va. 722, 791 S.E.2d 168 (2016), Blackhawk, as the last employer where Mr. Albright was exposed to forceful, repetitive use of his hands, may be charged in this CTS occupational disease claim.

While Blackhawk asserts various arguments challenging this finding, it has failed to present evidence to show the Board was clearly wrong and its appendix on appeal contained less than half the documents that were submitted to the Board. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and holding Mr. Albright's bilateral CTS compensable.

Accordingly, we affirm the Board's July 8, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

---

[4] Blackhawk challenges the Board's reliance on Mr. Albright's testimony that he was never diagnosed with or received medical treatment for diabetes. The Board's order does reference an April 9, 2024, medical record that stated Mr. Albright had type 2 diabetes with an onset of January 31, 2024. However, Blackhawk has failed to include this medical report in the record on appeal and none of the documents provided contradict Mr. Albright's testimony.

5

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White