IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**THOMAS HEALTH SYSTEM, INC.,**
**Employer Below, Petitioner**

**FILED**
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-396**          (JCN: 2016021924)

**TINA SPENCE,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas Health System, Inc. ("Thomas") appeals the September 11, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Tina Spence filed a response.[1] Thomas did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which denied authorization for a neuromuscular electrical stimulator ("NMES").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On February 20, 2016, Ms. Spence presented to Thomas Memorial Hospital with an occupational back injury that occurred when a patient grabbed her around the neck and pulled her down. The clinical impression was acute lumbar strain. Ms. Spence submitted the Employees' and Physicians' Report of Occupational Injury or Disease dated February 20, 2016, indicating that she sustained an injury to her lower back on that day while transferring a patient from a stretcher to a bed. Per the physician's section, Ms. Spence sustained an acute lumbar strain as a direct result of an occupational injury. On February 26, 2016, the claim administrator issued an order, which held the claim compensable for lumbar sprain/strain.

On March 1, 2016, Vellaiappan Somasundaram, M.D., completed an Attending Physician's Report, identifying the diagnoses as lumbago, lumbar disc disease, and radiculopathy. Ms. Spence underwent an MRI of the lumbar spine on March 7, 2016,

---

[1] Thomas is represented by Charity K. Lawrence, Esq. Ms. Spence is represented by William B. Gerwig III, Esq.

revealing disc desiccation most significant at the L5-S1 level, moderate left and mild right exit foraminal narrowing, and no herniated disc fragment or high-grade central to high-grade exit foraminal narrowing. On March 28, 2016, Ms. Spence followed up with Dr. Somasundaram. The assessment was sprain of ligaments of the lumbar spine and lumbar radiculopathy. Ms. Spence was referred to a neurosurgeon for back pain with radiculopathy.

Ms. Spence was seen by Lana Christiano, M.D., on April 13, 2016, for the chief complaint of left S1 radiculopathy. It was noted that Ms. Spence had a past medical history of mid-thoracic back pain and low lumbar back pain. The assessment was thoracic or lumbosacral neuritis or radiculitis, displacement of lumbar intervertebral disc without myelopathy, and intervertebral disc disorders with radiculopathy of the lumbosacral region. An EMG report of the lower extremities dated May 16, 2016, revealed no abnormalities.

On June 27, 2016, Ms. Spence was seen by Jan Muizelaar, M.D., for low back and left leg pain. Ms. Spence reported that the low back pain radiated to the left hip and to the lateral foot. The possibility of an L5-S1 left microdiscectomy or interbody fusion was discussed. An operative report dated August 23, 2016, identified the pre- and post-operative diagnoses as L5-S1 spondylolisthesis and left radiculopathy. The procedure was a L5-S1 posterior lumbar interbody fusion with L5-S1 posterior lumbar interbody fusion with autograft, O-arm imaging microscopic dissection, and fluoroscopy. Ms. Spence underwent an MRI of her lumbar spine on October 31, 2016, revealing postoperative changes at the L5-S1 level.

Ms. Spence returned to Dr. Somasundaram on May 16, 2017, for back pain. The assessment was sprain of ligaments of the lumbar spine and radiculopathy of the lumbar region. Ms. Spence underwent an MRI of the cervical spine dated August 9, 2017, revealing no significant disc bulge or disc herniation, no acute process, and no concerning focal abnormality.

On August 29, 2017, Ms. Spence followed up with Dr. Christiano for one year status-post L5-S1 fusion with persistent problems of mild-to-moderate back pain, left leg pain, and neurogenic bowel and bladder. It was noted that Ms. Spence received injections in the back that lasted for about three weeks. The impression was arthrodesis status and status-post L5-S1 with post-laminectomy, neuritis. Dr. Christiano recommended a spinal cord stimulator ("SCS") trial.

Bruce Guberman, M.D., evaluated Ms. Spence on September 19, 2017. Ms. Spence had complaints of low back pain radiating into the left hip and left leg, with numbness and tingling in the left leg. Ms. Spence further reported that the numbness, tingling, and increased sensitivity improved but were not resolved with injections. The assessment was chronic post-traumatic strain of the lumbar spine with disc disease, particularly at the L5-

2

S1 level, resulting in lumbar radiculopathy; status-post L5-S1 posterior lumbar interbody fusion with autograft on August 23, 2016; neurogenic bladder; and bowel dysfunction. Dr. Guberman noted Ms. Spence's statement that surgery performed on August 23, 2016, did not improve her symptoms, and afterwards she had increased sensitivity, numbness, tingling, and pain in the left leg. It was further noted that Ms. Spence had received extensive conservative treatment and injections, but symptoms had persisted. Dr. Guberman opined that Ms. Spence had reached maximum medical improvement ("MMI") and that no further treatment was necessary except ongoing maintenance treatment in the form of follow-up visits and her current medications.

Bobby Miller II, M.D., a forensic psychiatrist, completed a report dated October 23, 2017. Ms. Spence presented for a psychiatric recommendation for placement of an SCS. Ms. Spence's complaints consisted of lower back pain, left leg pain, numbness and burning in the left foot, pain and numbness in the right foot, neurogenic bladder/bowel, depression, anxiety, and anger since the compensable injury of February 20, 2016. Dr. Miller found no psychiatric issues that would disqualify Ms. Spence from receiving an SCS.

On December 28, 2017, Ms. Spence underwent a spinal cord stimulation trial under fluoroscopy. The pre- and post-operative diagnoses were post lumbar laminectomy syndrome and subsequent lumbar sprain. On February 22, 2018, Ms. Spence underwent SCS and generator implantation under fluoroscopy. The pre- and post-operative diagnoses were sprain of the ligaments of the lumbar spine, chronic pain syndrome, and post lumbar laminectomy syndrome.

Christopher Kim, M.D., a pain management specialist, treated Ms. Spence between October 23, 2018, and September 20, 2023, for low back pain and bilateral leg pain. In 2018, Ms. Spence was assessed with lumbar sprain, lumbar radiculopathy, complex regional pain syndrome of the lower limb, low back pain radiating to the left lower extremity, chronic pain, footdrop, and chronic low back pain. On August 5, 2019, Dr. Kim performed a revision of the lumbar spine SCS system with a new DRG spinal cord system. The pre- and post-operative diagnoses were lumbar sprain/strain and migrated SCS electrode. On October 24, 2019, Ms. Spence presented with left leg and low back pain. She reported pain that radiated from the low back into the left buttock and down the posterior side of the leg to the toes, and numbness from the left hip to the foot. Ms. Spence reported that since the SCS was implanted, her right leg pain was better. The physical examination revealed lumbosacral abnormalities upon palpation, lumbosacral tenderness, and lumbosacral abnormal motion. The neurological examination revealed abnormal sensory testing, numbness to lower extremity(s), tingling to lower extremity(s), abnormal deep tendon reflexes, and clonus of the ankle/knee. The assessment was lumbar sprain and lumbar radiculopathy. On May 8, 2020, Ms. Spence underwent lumbar interlaminar epidural steroid injections into the L3-L4 epidural space.

On September 20, 2021, Ms. Spence underwent a left lumbar medial branch block at L4-L5 and L5-S1 levels under fluoroscopy performed by Dr. Kim. The pre- and post-operative diagnoses were lumbosacral spondylosis without myelopathy and chronic pain syndrome. On April 13, 2023, Ms. Spence reported to Dr. Kim that the SCS worked well, and the Percocet gave her 70% relief. However, it was noted that Ms. Spence reported a complaint of pain in the mid back radiating to the bilateral musculature. Thoracic bilateral trigger point injections were recommended. Ms. Spence was assessed with the additional condition of myalgia. On September 20, 2023, Ms. Spence reported that she had no new pain or acute pain issues at this time.

The claim administrator issued a grievable order dated October 6, 2023, which denied authorization for trigger point injections for the diagnosis of myalgia based upon Dr. Rebecca Thaxton's Physician Review report dated June 29, 2023. An Encova Select Grievance Board Determination, dated November 7, 2023, found that the denial of trigger point injections for the diagnosis of myalgia should be affirmed based upon Dr. Thaxton's recommendations. Ms. Spence protested this decision.

On January 22, 2024, the Board issued a decision affirming a prior claim administrator's order.[2] In that decision, the Board noted that a claim administrator's order dated November 18, 2016, granted authorization for L5-S1 posterior lumbar interbody fusion, L5-S1 posterior lumbar interbody fusion surgeon fees, L5-S1 posterior lumbar interbody fusion assistant surgeon fees, pre-admission testing, pre-physical therapy measurement evaluation, post-physical therapy measurement evaluation, post-op visit after surgery/medical clearance for surgery with PCP Dr. Robie, and follow-up appointment with Dr. Christiano prior to surgery.

Ms. Spence was treated for pain management from January 23, 2024, through February 24, 2025. On January 23, 2024, Ms. Spence presented with chronic low back pain, and reported that her medication provided improved quality of living without unwanted side effects. The assessment was myalgia, lumbar radiculopathy, and chronic low back pain. On May 22, 2024, Ms. Spence reported that she got 50% relief from lumbar epidural injections and 50% relief from Percocet. Ms. Spence denied any new or acute pain issues. The assessment was chronic pain syndrome and lumbar radiculopathy. On July 22, 2024, Ms. Spence underwent another set of injections at the L3-L4 level. On August 5, 2024, Ms. Spence reported that her pain was relieved with the SCS, medication, and lying down. Further, Ms. Spence reported that she got about 70% relief from the injection. On October 17, 2024, Ms. Spence was being treated for low back pain radiating into the bilateral legs. Ms. Spence reported that she did not need any injections or interventions.

---

[2] This order is not the lower record, but it is noted it the Board's September 11, 2025, order.

On November 19, 2024, Ms. Spence reported tingling in her bilateral legs that had been ongoing for three weeks. Ms. Spence reported that this was a different kind of pain and that the SCS did not help with this pain. The assessment was chronic pain syndrome, lumbar radiculopathy, and lumbosacral radiculopathy.

On December 19, 2024, Ms. Spence reported that the SCS was not managing her pain as well as before, and she requested a consultation for a SCS adjustment/ reprogramming. On February 24, 2025, Ms. Spence reported that the SCS was managing her pain well and deferred the need for any adjustment/re-programming. Ms. Spence reported lumbar pain, spasms, and weakness localized to the region where she had lumbar surgery. It was recommended that Ms. Spence be approved for a NMES for muscle atrophy, increased circulation, and pain/muscle spasms from Ms. Spence's work injury. The assessment was chronic pain syndrome, lumbosacral radiculopathy, lumbar radiculopathy, and chronic pain disorder.

Ms. Spence underwent a CT of her lumbar spine on December 5, 2024, revealing L5-S1 fusion with intact hardware and disc augmentation; L5 decompressive laminectomy; indwelling neurostimulator device which exits the spinal canal at the T12-L1 left intervertebral foramen; bilateral sacral neurostimulators transverse the S1-S2 sacral foramina; no pathologic findings related to the spinal canal; unremarkable extraspinal lumbar soft tissues; and mild bilateral degenerative facet arthropathy at L4-L5.

On March 13, 2025, Dr. Thaxton completed a Physician Review report considering whether the NMES should be approved. Dr. Thaxton opined that the NMES should not be approved because the Official Disability Guidelines ("ODG") do not support use of the NMES based on evidence showing inconclusive benefit, lack of benefit, or potential harm. Dr. Thaxton reported that the diagnoses in the claim were lumbar sprain, lumbar IV-disc displacement/ herniated nucleus pulposus ("HNP"), and neurogenic bladder.

The claim administrator issued a grievable order dated March 21, 2025, which denied authorization for the NMES based upon Dr. Thaxton's Physician Review report. The Encova Select Grievance Board ("Encova") issued a Determination dated April 22, 2025, finding that the denial of the NMES should be affirmed based on Dr. Thaxton's recommendation. Encova noted that Ms. Spence had been placed at MMI. Ms. Spence protested this order.

On September 11, 2025, the Board reversed the claim administrator's order, which denied authorization for an NMES. The Board found that the evidence establishes that an NMES is medically related and reasonably required for the compensable injury. Thomas now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Thomas argues that the preponderance of the evidence shows that NMES is not reasonably required for the work injury, because the ODG does not support the device. Thomas asserts that the ODG "is the most comprehensive and up-to-date worldwide medical treatment and return to work guideline" and that pursuant to W. Va. Code R. §§ 85-20-16 and 85-20-17, an NMES would be experimental or unusual treatment which requires additional documentation to be covered in a workers' compensation claim. Thomas further argues that Ms. Spence failed to rebut the medical determination made based on the ODG. We disagree.

Here, the Board determined that the evidence establishes that an NMES is medically related and reasonably required for the compensable injury. The Board noted that Ms. Spence underwent an L5-S1 posterior lumbar interbody fusion, which was authorized in the claim, and that she continues to suffer lumbar pain and radicular symptoms following the surgery. The Board specifically found that Ms. Spence's pain management specialist is in the best position to determine the treatment needed for the compensable injury and is reliable and more persuasive than Dr. Thaxton.

Upon review, we conclude that the Board was not clearly wrong in finding that the evidence establishes that an NMES is medically related and reasonably required for the compensable injury. Further, the Board was not clearly wrong in finding that Ms. Spence's pain management specialist is in the best position to determine the necessary treatment for

the compensable injury. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which denied authorization for an NMES.

We also find no merit in Thomas' argument that the ODG should determine reasonable treatment. Thomas failed to establish that its workers' compensation program operates under an approved managed care plan that allows it to utilize the ODG instead of W. Va. Code R. § 85-20 (2006) treatment guidelines. W. Va. Code R. § 85-20-63 only allows employers, private carriers, or self-insured employers to use other treatment guidelines to establish such things as medical treatment protocols if they "are part of a managed care plan otherwise approved by the [Insurance Commissioner] ... pursuant to W. Va. Code § 23-4-3(b)(2) (2003)." Further, Thomas failed to submit the guidelines that it relies on to the Board for review.

Accordingly, we affirm the Board's September 11, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

7