IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SUPERIOR HOME SPECIALISTS,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-371**          (JCN: 2022025572)

**MICHAEL SINDLEDECKER,**
**Claimant Below, Respondent**

**FILED**
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Superior Home Specialists ("SHS") appeals the August 20, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Michael Sindledecker filed a response.[1] SHS did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Sindledecker a 19% permanent partial disability ("PPD") award, and instead granted an additional 18% PPD for a total award of 37%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On June 6, 2022, Mr. Sindledecker was transported by EMS to Charleston Area Medical Center's ("CAMC") emergency department. Medical records indicate that Mr. Sindledecker was electrocuted while holding on to a gutter that hit a power line. John DeLuca, M.D., performed a right arm laceration repair on Mr. Sindledecker on June 6, 2022.

Zach Tankersley, M.D., a podiatrist at Cabell Huntington Hospital, examined Mr. Sindledecker on June 6, 2022, for a consultation regarding bilateral foot electrical burns. Dr. Tankersley stated that Mr. Sindledecker was at risk of losing part of his feet and permanent disability from the injury. He opined that Mr. Sindledecker required surgery with debridement and flap closure for both feet. Mr. Sindledecker underwent an x-ray of

---

[1] SHS is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Sindledecker is represented by Robert F. Vaughan, Esq., and Linda N. Garrett, Esq.

his right elbow, revealing antecubital subcutaneous gas. X-rays of both feet were also performed, revealing a subcutaneous gas plantar on the head of the first metatarsal.

Mr. Sindledecker submitted an Employees' and Physicians' Report of Occupational Injury or Disease form dated June 6, 2022, indicating that he injured his hands and feet on that date when he grabbed a gutter, and a power line was on it. Medical personnel from CAMC completed the physicians' section on June 6, 2022, indicating that Mr. Sindledecker injured his hands, forearms, abdomen, and bilateral feet.[2]

On June 8, 2022, Peter Ray, M.D., indicated that Mr. Sindledecker was treated for third-degree burns to bilateral hands, forearms, right arm, and bilateral feet. It was noted that the injuries would require operative debridement by podiatry and that Mr. Sindledecker would require conditioned monitoring.

Mr. Sindledecker underwent excision of the burns and preparation of the wound beds of the abdomen, bilateral feet, right arm, and left hand on June 13, 2022, performed by Carrie Sims, M.D., at The Ohio State University ("OSU") Wexner Medical Center. The postsurgical findings were a right foot fourth-degree burn that extended down into the right great toe distal phalangeal joint, a left foot burn that extended into the abductor hallucis muscle, and scattered third-degree burns to the abdomen, right forearm, and left hand.

On June 22, 2022, Mr. Sindledecker underwent a right great toe amputation with plastic and reconstructive surgery, split thickness skin grafting to the abdominal wall, right forearm, and bilateral feet with allografts placed to the left medial foot and primary excision of the right forearm wound with primary closure. On the day of discharge, it was noted that Mr. Sindledecker was ambulating independently, tolerating a regular diet, and his vital signs were stable. Mr. Sindledecker reported his pain was well controlled on an oral regimen. On July 8, 2022, the discharge records from Dr. Sims noted that Mr. Sindledecker was treated for approximately 3.5% total body surface area electrical burns to the abdomen, right forearm, left hand, and bilateral feet.

Mr. Sindledecker was admitted to OSU Wexner Medical Center again on July 9, 2022, and was not discharged until August 26, 2022. On July 16, 2022, Mr. Sindledecker underwent excision and split-thickness skin graft to the bilateral feet and removal of a pin from the left great toe. He continued to have hypersensitivity over his bilateral skin grafts and x-rays of his bilateral feet showed concern for osteomyelitis. A bone biopsy of both feet was done, and the areas were debrided and washed out after the cultures were sent. The bone biopsy was found to have *Candida parapsilosis* growing on August 5, 2022.

_____

[2] The Board noted that neither party submitted an order addressing the compensable conditions in this claim.

2

Osteomyelitis of the feet was found after a skin grafting of the electrical burn. Mr. Sindledecker was given a six-week course of antibiotics and antifungal medications.

On June 3, 2024, Prasadarao Mukkamala, M.D., evaluated Mr. Sindledecker and noted that Mr. Sindledecker was injured at work on June 6, 2022, when he was working on gutters and the gutter that he was handling struck a power line, electrocuting him. Dr. Mukkamala stated that Mr. Sindledecker had burns over the right forearm, lacerations over the right forearm near the elbow, small lacerations in the palm of both hands, a burn over the abdomen, and a burn over both feet covering most of the big toe. He opined that it appeared the burn over the right forearm was an entry point, and the burns over both feet were the exit wounds. Dr. Mukkamala stated that Mr. Sindledecker underwent proper burn care and had skin grafting using the thigh as the donor site. He noted that Mr. Sindledecker developed osteomyelitis in the right foot and underwent "amputation of the right great toe through the proximal phalanx." Mr. Sindledecker reported pain in both feet, which became significantly aggravated if he was on his feet for about two and a half hours, and stated that he was able to carry on his activities of daily living for the most part but had difficulty showering because of balance issues.

Dr. Mukkamala noted that physical examination revealed scarring on the right forearm, right mid forearm, both hands, right thumb, and abdomen; and that there was scar hypertrophy over the scars on the mid forearm and abdomen. Mr. Sindledecker was noted to have very mild limitation of motion of the toes in the left foot, as well as mild limitation of the right ankle and right hindfoot. Dr. Mukkamala stated that range of motion of the toes was significantly limited in the right lower extremity and slightly limited in the left lower extremity. He noted there was grafted skin with scarring on the right foot with some degree of scar hypertrophy, as well as a scar on the left foot on the grafted skin with some degree of scar hypertrophy. Motor examination was normal and the sensory examination was normal except over the scarred areas, where it was somewhat diminished. Dr. Mukkamala concluded that the diagnoses were history of electrocution; burns, some of which were third-degree, covering a total of 3.5% total body surface area and involving both upper extremities, the abdomen, and both feet; and amputation of the right great toe through the proximal phalanx. Dr. Mukkamala found that Mr. Sindledecker was at maximum medical improvement ("MMI") for the compensable injuries.

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Mukkamala opined that from Table 2 on page 280, Mr. Sindledecker qualified for 10% whole-person impairment ("WPI") for burns noting that he had skin grafting and the burns healed well but he continued to have symptoms and his balance was poor, interfering with activities of daily living; 3% WPI for the amputation of the great toe through the proximal phalanx; 3% WPI for loss of range of motion at the right ankle; 1% WPI for loss of range of motion of the right hindfoot; and 2% WPI for loss of range of motion of the toes in the right foot. For the left lower extremity, Dr. Mukkamala assessed 1% WPI for loss of motion of the toes. Dr. Mukkamala opined

3

that the statutory guidelines for impairment related to the great toe amputation do not apply because the amputation here was through the proximal phalanx. Dr. Mukkamala combined his ratings and found a total of 19% WPI due to the compensable injury. On June 28, 2024, the claim administrator issued an order granting Mr. Sindledecker a 19% PPD award based on Dr. Mukkamala's report. Mr. Sindledecker protested this order.

On October 28, 2024, Bruce Guberman, M.D., evaluated Mr. Sindledecker and reviewed his medical history. Mr. Sindledecker reported that he had to avoid the sun and use sunscreen and lotions on a regular basis. Mr. Sindledecker also reported that: the scarred areas were sensitive to touch and were associated with sharp pain especially in his palms and fingers, which were also severely pruritic (itchy); the scarred areas of his abdomen and right palm and forearm were very sensitive to touch with an uncomfortable tingling sensation that usually spread to the entire right forearm and they were also pruritic; the scar from the laceration in the right upper arm was sensitive to touch and pruritic; he experiences numbness and tingling over the palmar aspect of the right forearm from the right wrist to the elbow; the scars over the medial and dorsal left foot, including the left great toe, were painful and tender to touch; the scars on the right foot, especially at the stump of the amputated right great toe, were very sensitive to touch or being bumped and were also pruritic intermittently; and he experiences intermittent stiffness of the left great toe. Mr. Sindledecker denied weakness but reported fatigue in the right arm, especially when he tried to lift or carry objects. He stated that he could no longer do yard work and had difficulty shopping, especially if it was more than one hour, because it caused severe, aching pain in both feet, and that he sometimes used a scooter when shopping. Regarding the effects of the injuries on other activities, Mr. Sindledecker stated that he could no longer go hiking as it caused severe pain in his feet; he had not tried bike riding because he believed that would cause pain in his feet and arm; when driving, he had to use the outside of his feet to operate the pedals; he could no longer play basketball or run track; he had not tried four-wheeling because he believed it would cause marked increased symptoms in particular because of the vibration; and he could no longer walk on uneven ground, hard surfaces, or on rough terrain.

Dr. Guberman stated that the diagnoses were history of an electrocution injury; third-degree burns over both upper extremities and the abdomen; status post multiple surgical procedures, including skin grafting, and status post multiple symptomatic scarring; and amputation of the right great toe. He found that Mr. Sindledecker was at MMI from the compensable injuries. Dr. Guberman opined that Mr. Sindledecker would benefit from following up with a physician trained in treating burns such as the physical medicine/rehabilitation specialist or burn specialist. Dr. Guberman noted that Mr. Sindledecker required ongoing medication that he was currently taking in the form of Neurontin and Gabapentin.

4

Using the *Guides*, Dr. Guberman rated the impairment for the scarring, under Table 2 on page 280, and found that Mr. Sindledecker qualified for 24% WPI under Class 2, the criteria of which includes: "signs and symptoms of skin disorder are present or intermittently present; limitation in the performance of some of the activities of daily living; and intermittent to constant treatment may be needed." Dr. Guberman stated Mr. Sindledecker met all the criteria because the signs and symptoms were present constantly, he had limitations involving standing, walking, kneeling, squatting, climbing stairs, climbing ladders, and any activities where he was exposed to the sun, and he must avoid the risk of further trauma to the burned areas, particularly on his feet. He opined that Mr. Sindledecker was at the upper end of Class 2 and almost qualified for Class 3. Dr. Guberman further found that Mr. Sindledecker qualified for 10% WPI for the amputation of the right great toe through the proximal phalanx. He noted that the statutory guidelines indicate the loss of a great toe shall be considered a 10% disability, and the loss of the great toe (one phalanx) shall be considered a 5% disability. Dr. Guberman stated that Mr. Sindledecker suffered more than the loss of one phalanx, and therefore, "more probably" should receive 10% WPI. He noted that even if one counts only the one phalanx that had been amputated, he would receive 5% WPI instead of the 3% WPI recommended by Dr. Mukkamala. Dr. Guberman found 2% WPI for loss of range of motion of the lesser toes of the right foot, 2% WPI for loss of range of motion of the lesser toes of the left foot, 3% WPI for loss of range of motion in plantar flexion and extension (dorsiflexion) of the right ankle, and 1% WPI for loss of range of motion in inversion and eversion of the right hindfoot. Dr. Guberman stated that Mr. Sindledecker's impairment combined for a total of 37% WPI due to the compensable injury.

On May 15, 2025, Christopher Martin, M.D., evaluated Mr. Sindledecker and reviewed his medical history. Mr. Sindledecker reported that he had nerve damage in both his right arm and both of his feet. He experienced a tingling sensation in the right forearm if touched anywhere distal to the elbow and a similar sensation if he lifts a milk jug with his right hand. He reported that the scars in his hands cause sharp pain when he grips with his hands. In his feet, he has a pins and needles sensation when walking or touching the inner part of both feet, even while wearing socks. He stated this occurs when walking in the grocery store for more than 10-15 minutes. He described his skin on his feet as rubbed raw from prolonged walking. He indicated that he applies lotion to his scars approximately once a month. He uses sunscreen generally throughout his body. He was very worried about getting a sunburn on his feet, but simply had not had this area exposed outside for this to be a problem. He was taking Gabapentin on an as-needed basis, no more than once a week depending on his activity level. Mr. Sindledecker stated that he could no longer play basketball or go hiking. Dr. Martin stated that Mr. Sindledecker sustained an electrical injury with burns at multiple sites covering approximately 3.5% of his body surface area, status post amputation of the distal phalanx of the right great toe and multiple skin grafting procedures, and he also sustained a laceration to the right anterior forearm status post suturing. Dr. Martin noted that Mr. Sindledecker was not under any active medical

treatment for more than one year, according to both his history today and the available medical records.

Using the *Guides*, Dr. Martin opined that, from Table 2 on page 280, Mr. Sindledecker qualified for 10% WPI under a Class 2 skin disorder, which allows a range of 10-24% WPI. He stated it was important in determining the specific impairment by this table to consider the examples provided in the *Guides*, and he believed Mr. Sindledecker's case was closest to example 2 on page 283.[3] Dr. Martin stated that this description was very similar to Mr. Sindledecker's from a functional perspective, and stated that, therefore, he formulated a 10% WPI. Dr. Martin noted that Dr. Guberman provided a 24% WPI for the scars, finding that Mr. Sindledecker had limitations in performing multiple activities of daily living. Dr. Martin stated that he was unable to confirm these physical limitations on his physical examination, as Mr. Sindledecker walked normally and could perform a full squat. Dr. Martin disagreed with Dr. Guberman's finding of 10% WPI for the great toe amputation, stating that he was incorrect in treating this as a complete amputation. Dr. Martin indicated that his assessment of 5% was based on West Virginia Code § 23-4-6(f), which specifically states that the loss of a great toe (one phalanx) shall be considered a 5% disability. He stated that it was clearly the case here. Although Dr. Martin noted that he could not locate the operative report from the surgical procedure, he stated that Dr. Guberman's physical examination documented that the amputation occurred at the interphalangeal joint. Dr. Martin further found that Mr. Sindledecker qualified for 2% WPI for loss of range of motion of the lesser toes of the right foot, 2% WPI for loss of range of motion of the lesser toes of the left foot, and 2% WPI for loss of range of motion of the left great toe. He stated that the range of motion was normal in both knees, ankles, and hind feet, and therefore, there was no impairment. Dr. Martin acknowledged that the two other evaluators provided impairment for loss of range of motion in the right ankle and hindfoot and stated that Mr. Sindledecker's range of motion might have improved since Dr. Guberman's evaluation of October 28, 2024. In all, Dr. Martin found a total of 19% WPI.

On August 20, 2025, the Board reversed the claim administrator's order, which granted Mr. Sindledecker a 19% PPD award, and instead granted an additional 18% for a total PPD award of 37%. The Board found that Mr. Sindledecker established that he was entitled to a 37% PPD award for the compensable injury. SHS now appeals the Board's order.

---

[3] Example 2 on page 283 of the *Guides* considers a worker who suffered a second-degree burn to his neck (an estimated 1% of his skin surface), whose limitations were that he had to wear sun block when outdoors, and he could not wear clothes that rubbed his neck. He also experienced intermittent episodes of itching and burning of the scarred areas that temporarily caused him to stop all activities for five to ten minutes. The authors of the *Guides* assigned a 10% WPI for the scar.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

SHS argues that Mr. Sindledecker's right big toe was amputated at the interphalangeal joint; thus, the Board erred in granting full statutory amputation value for the toe. SHS further argues that Dr. Guberman misapplied Table 2, page 280 of the *Guides*, thus rendering his report invalid. We disagree.

Here, the Board determined that Dr. Guberman's report finding that Mr. Sindledecker had 37% WPI was the most reliable and credible. The Board noted that Dr. Guberman's rating of the great toe amputation differed from the other two physicians, and it found that:

> Regarding the great toe amputation, Dr. Mukkamala stated that the statutory guidelines did not apply to this amputation because it was through the proximal phalanx. This finding is not credible or reliable given the fact that the statutory guidelines provide for an impairment rating for loss by severance, which is the case here. Dr. Martin stated that he could not find the operative report but stated that Dr. Guberman's physical examination documented that the amputation occurred at the interphalangeal joint, which would qualify for 5% WPI instead of a 10% WPI. Dr. Guberman stated that the amputation was through the proximal phalanx, which meant that he had an amputation of more than one phalanx of the right great toe and qualified for 10% WPI for a loss of the great toe. Dr. Mukkamala likewise described

the amputation as through the proximal phalanx. Dr. Guberman's explanation of providing the entire statutory impairment for loss of the great toe is considered the most reliable and credible based on his and Dr. Mukkamala's documentation of an amputation through the second joint of the toe.

As to Table 2, page 280 of the *Guides*, the Board found that:

> The Table of the AMA *Guides* regarding skin disorders allows discretion in placing the claimant within the categories. All evaluators placed the claimant under Class 2 with a range of 10-24% WPI. Dr. Mukkamala provided no explanation for the 10% WPI other than noting that he had skin grafting and the burns healed well but he continued to have symptoms and his balance was poor interfering with activities of daily living, and thus, his findings are considered less credible for that reason. Dr. Martin's statement that the claimant's skin disorder is the same as the example he discussed is not considered reliable or credible since the example case does not involve limitations such as balance or walking whereas the subject claimant has those limitations. Dr. Guberman's finding of 24% WPI is considered the most reliable and credible recommendation based on the consideration of all of the claimant's balance issues and other limitations due to the burns, grafting, and scarring on the bottom of his feet, which was also documented by Dr. Mukkamala in his examination findings.

The Board noted that Mr. Sindledecker suffered a significant injury, he had undergone several surgeries and continued to have limitations. Ultimately, the Board determined that Dr. Guberman's report was the most consistent with the medical records. Thus, the Board found that Mr. Sindledecker was entitled to a total PPD award of 37% based on Dr. Guberman's report.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Sindledecker was entitled to a total PPD award of 37% based on the medical evidence. Further, the Board was not clearly wrong in finding that Dr. Guberman's report was the most reliable and credible, as his report was the most consistent with the medical evidence. Dr. Guberman adequately explained why he placed Mr. Sindledecker in the upper range of a Class 2 skin disorder and the reasons for finding that Mr. Sindledecker was entitled to a 10% statutory impairment for an amputation of the right great toe. We defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Further, as the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which granted Mr. Sindledecker a 19% PPD award, and instead granted an additional 18% for a total PPD award of 37%.

Accordingly, we affirm the Board's August 20, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

9